708 So.2d 866 (1998)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Lillie Blackmon SANDERS.
No. 96-CC-00575-SCT.
Supreme Court of Mississippi.
February 26, 1998.
*867 Luther T. Brantley, III, Jackson for Petitioner.
Bennie L. Turner, West Point, for Respondent.
En Banc.
JAMES L. ROBERTS, Jr., Justice, for the Court:

STATEMENT OF THE CASE
¶ 1. On August 11, 1995, the Mississippi Commission on Judicial Performance filed a formal complaint charging Lillie Blackmon Sanders, Circuit Court Judge for the Sixth Circuit Court District of Mississippi, with judicial misconduct. The Commission charged that Judge Sanders violated Canons 1, 2 A, 3 A(1), 3 A(4), and 3 B(1), 3 C(1)(b), of the Code of Judicial Conduct of Mississippi Judges that constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Section 177A, Mississippi Constitution of 1890, as amended.
¶ 2. The formal complaint arose from the post-sentencing release of two prisoners. On December 13, 1995, a three-member panel of the Commission heard the matter. On February 9, 1996, the Commission found that Judge Sanders had engaged in conduct constituting willful misconduct in office and *868 conduct prejudicial to the administration of justice which brings the judicial office into disrepute. For these violations the Commission recommended that Judge Sanders be fined $1,500 and be publicly reprimanded.
¶ 3. This case is substantially identical to this Court's recently published opinion, Mississippi Commission on Judicial Performance v. Russell, 691 So.2d 929 (Miss. 1997), and therefore is affirmed.
I. DID THE CONDUCT OF JUDGE LILLIE BLACKMON SANDERS CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO § 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
II. SHOULD JUDGE LILLIE BLACKMON SANDERS BE PUBLICLY REPRIMANDED, FINED $1,500 AND ASSESSED THE COSTS OF THIS PROCEEDING BY THE MISSISSIPPI SUPREME COURT, PURSUANT TO § 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?

STATEMENT OF THE FACTS
¶ 4. Lillie Blackmon Sanders was elected and began to serve her term as Circuit Judge for the Sixth Circuit Court District of Mississippi on January 2, 1995. Although not clearly stated in the record, Judge Sanders previously served in the same position during a portion of 1989-1990.
¶ 5. Based upon an anonymous complaint, on August 11, 1995, the Mississippi Commission on Judicial Performance filed a formal complaint charging Judge Sanders with judicial misconduct constituting violations of Canons 1, 2 A, 3 A(1), 3 A(4), and 3 B(1), 3 C(1)(b), of the Code of Judicial Conduct of Mississippi Judges and constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Section 177A, Mississippi Constitution of 1890, as amended.
¶ 6. The alleged judicial misconduct arose from the post-sentencing release of two inmates after the term of court during which they were sentenced. The Commission charged that Judge Sanders, acting in her official capacity, entered an order which suspended the sentence of a former client and entered an order which suspended the sentence and placed another inmate on probation following a mandate from the Mississippi Court of Appeals which affirmed his conviction and sentence. Moreover, the Commission charged that Judge Sanders entered these orders with the knowledge that she lacked both the authority and jurisdiction to do so.
¶ 7. On October 13, 1995, Judge Sanders filed her answer to the formal complaint. On December 13, 1995, a hearing was held before a Commission committee, comprised of Judge John M. Montgomery, Judge Gaston H. Hewes, Jr. and Margarett E. Steele. The hearing allowed each side to present testimony and material evidence.
¶ 8. On February 9, 1996, the Commission filed its findings of fact and recommendation. The Commission declared its findings of fact:
Based on the testimony and evidence presented in this cause, the Commission finds the following by clear and convincing evidence, to-wit:
6. The Respondent, in her official capacity as Circuit Court Judge, entered an order on May 9, 1995, in the Circuit Court of Adams County, Mississippi, in Cause No.'s 8945, 8946, and 10016, in which she suspended the sentence previously entered in these cases. The Commission finds that the Respondent did this with the full knowledge that she lacked jurisdiction to enter such orders. The Respondent acknowledges that she did not consider the Uniform Post Conviction Relief Act in these matters and the Commission finds that the time for entering any such orders, other than Post Conviction, had previously run. The Commission also finds that the Respondent was, or should have been, aware of Section 47-7-33 of the Mississippi Code Annotated, Harrigill v. State, 403 So.2d 867 (Miss. 1981) as well as the Canons of the Code of Judicial Conduct.

*869 The Commission finds Judge Sanders' orders violated Canons 1, 2A, 3A(1), 3A(4) and 3B(1) of the Code of Judicial Conduct of Mississippi Judges.
COUNT II
7. The Respondent had represented the defendant in cause No's 8945 and 8946, and then as Circuit Judge entered the order suspending the sentence in each case. The Commission finds that while there was a scrivener's error in the numbers on the orders presented to the judge, the only cases in Adams County concerning this defendant were those in which the Respondent had represented the defendant. The Commission further finds that previous representations of a defendant should have put the respondent on notice that a close examination of all proceedings involving the defendant would be necessary.
By engaging in the aforementioned conduct, the Respondent violated Canons 1, 2A, 3A(1), 3A(4), 3B(1) and 3C(1)(b) of the Code of Judicial Conduct of Mississippi Judges.
COUNT III
8. The Court of Appeals issued a Mandate in a case from Amite County styled Charles H. Spears v. State of Mississippi, # 93-KA-00945-COA, which affirmed a six month sentence previously imposed by the trial court. The Respondent, upon motion of the defendant's lawyer, entered an order suspending the jail sentence and placing the defendant on probation. The Commission finds that the Respondent did this with the full knowledge that a trial court lacks any authority to change a Mandate of an appellate court.
The Respondent's conduct in suspending the Mandate violated the principles set down in Denton v. Maples, 394 So.2d 895 (Miss. 1981), Lewis v. State, 414 So.2d 435 (Miss. 1982), and Canons 1, 2A, 3A(1), 3A(4), and 3B(1) of the Code of Judicial Conduct of Mississippi Judges.
RECOMMENDATION
Based upon the foregoing the Commission finds and by clear and convincing evidence that the conduct of the respondent, Judge Lillie Blackmon Sanders, constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution of 1890, as amended. The Commission recommends to the Mississippi Supreme Court that the Respondent be publicly reprimanded and fined $1,500.00 pursuant to section 177A of the Mississippi Constitution of 1890 and assessed costs.
¶ 9. The facts, circumstances and hearing testimony relevant to each matter is set forth in the following summaries:

Annie Mae Washington Binion
¶ 10. The first case in question is that of Annie Mae Washington Binion, Cause Numbers 8945, 8946 and 10016 in the Circuit Court of Adams County, Mississippi. On February 16, 1990, in Cause No. 8945 and 8946, Binion pled guilty to the felony charges of sale of marijuana and sale of valium. Lillie Blackmon Sanders was Binion's counsel of record. Circuit Judge Richard T. Watson accepted the guilty pleas and sentenced Binion to five years imprisonment in Cause No. 8945 and one year imprisonment in Cause No. 8946. Because of Binion's drug addiction, she was allowed to participate in the Regimented Inmate Discipline (RID) program. Judge Sanders testified that she had no further contact with Binion until she took office as Circuit Court Judge.
¶ 11. On April 26, 1994, Binion pled guilty in Cause No. 10016 to felony shoplifting; Lillie Blackmon Sanders was not counsel of record in this case. Judge Watson again presided. On April 27, 1994, Binion's probation (from Cause Nos. 8945 & 8946) was revoked by Judge Watson. On May 7, 1995, Judge Sanders suspended the sentences in Cause Nos. 8945, 8946 and 10016.
¶ 12. Judge Sanders testified she began to practice law in 1979, primarily in Adams County. Although she represented Binion in 1990, Judge Sanders stated that very little of her law practice consisted of criminal work. Judge Sanders testified, upon taking over as a judge, she was assigned Judge Watson's *870 old office. On her desk was a motion from Binion's attorney and proposed order suspending her sentence. She spoke with Judge Watson regarding the Binion case and other holdover cases. Judge Sanders stated that in the following months she received several letters from Binion and spoke with Binion's attorney regarding the intent of Judge Watson to release Binion when she completed the alcohol and drug program.
¶ 13. Judge Sanders stated she knew Binion was a former client of hers and was concerned there might be a conflict of interest. As a result, she went to the circuit clerk's office and pulled Cause No.'s 8945 and 8946 but did not see anything referencing Cause No. 10016. Judge Sanders testified that she was unsure of what she should do, so she called Assistant District Attorney Ronnie Harper and Parole Officer Ronnie Brown for advice.
¶ 14. Judge Sanders testified that she reviewed the court file for Cause No. 10016 but admitted that she did not review the transcript. After hearing a portion of the transcript from Cause No. 10016, Judge Sanders agreed that there is no question that the circuit court did not retain jurisdiction in Cause No. 10016. However, Judge Sanders stated personal conversations with Judge Watson led her to believe the court had retained jurisdiction. Judge Watson was not called as a witness to verify this testimony.
¶ 15. Judge Sanders testified that an informal discussion, in chambers, regarding Binion's release was held between Judge Sanders, counsel for Binion and Assistant District Attorney Ronnie Harper. No record or transcript of the meeting was taken. Harper stated the District Attorney's office would not pursue another unrelated charge against Binion and did not have any objection to the order suspending sentence. After this meeting, Judge Sanders instructed the court administrator to type the May 10, 1995, order which suspended Binion's sentence. Unknown to Judge Sanders, the court administrator transposed the Cause No.'s from 8945 and 8946 to 9845 and 9846. Judge Sanders testified that after she signed the order she did not look any further into the matter. Judge Sanders stated she did not know she was entering an order in the same matter in which she had represented Binion. Judge Sanders admitted she could have directed the circuit clerk to pull all cases involving Binion, and to discover if there were actually four prior convictions to Cause No. 10016 or just the two convictions.
¶ 16. Next, Judge Sanders stated the Department of Corrections had sent a letter (not produced at the hearing) indicating Binion had completed the drug and alcohol program and requested "some kind of order." Judge Sanders knew Binion had been convicted for felony shoplifting and sentenced to five years imprisonment in Cause No. 10016. Judge Sanders testified she assumed Judge Watson had retained jurisdiction for one year, although, by her own admission, no jurisdiction was retained.
¶ 17. On May 29, 1995, Joe Goff from the Attorney General's Office called Judge Sanders and informed her she had no jurisdiction to suspend the sentence. After their conversation, Judge Sanders researched the jurisdiction and discovered she had none. At this time, she learned that the Cause No.'s had been transposed by the clerk from 8945 and 8946 to 9845 and 9846. Judge Sanders pulled the files and realized she had entered an order suspending a sentence for a client she had represented in the same matter. On May 30, 1995, Judge Sanders entered an order rescinding the May 9, 1995, order that suspended Binion's sentence and granted probation.
¶ 18. Judge Sanders stated she did not know until the summer of 1995 a convicted felon is not eligible for probation on a subsequent offense. Counsel for Judge Sanders stipulated Denton v. Maples, 394 So.2d 895 (Miss. 1981), and Harrigill v. State, 403 So.2d 867 (Miss. 1981), prohibit modifying, changing or suspending a sentence of a felony after the term of court. Judge Sanders stated she did not speak with anyone regarding the appearance of impropriety of her hearing Binion's case.
¶ 19. When asked if she had read the Judicial Canons, and if the Canons prohibited her from hearing cases and motions, as those involving former clients like Binion, Sanders *871 testified, "I was  I went back and I did look at the Canons, and it did not  from the Canons it did not appear that I was disqualified from hearing cases." She stated in reviewing the court file of Cause No. 10016, she did not read the indictment which listed Binion's prior convictions in Cause No.'s 8945 and 8946. Judge Sanders stated she does not think acting in Cause No. 10016 pertaining to a former client created an appearance of impropriety. Judge Sanders stated, "I view that as having your former law partners appear before you in  in situations. And if it's something that if enough time has passed between that  and in this particular case, a period of five years had expired between the time that I had last represented  well, the time I represented her. There was no ongoing relationship or ongoing communications with Ms. Binion. I had not seen or heard from this lady since the day she took her plea." Sometime after May, 1995, Judge Sanders attended the Judicial National College, and she stated she now knows all ex parte communications are improper.

Charles H. Spears
¶ 20. The second case is the matter of Charles H. Spears, Cause No. 2315 in the Circuit Court of Amite County. Spears and Amite County Supervisor Max Lawson were involved in an altercation which resulted in the arrest of Spears. On July 7, 1993, Spears was convicted of disorderly conduct and was sentenced to six months in jail and fined $500 by Judge Watson. Spears appealed, and on April 11, 1995, the Court of Appeals, in Charles H. Spears v. State of Mississippi, No. 93-KA-00945 COA, affirmed Spears's conviction and sentence. On May 3, 1995, the mandate was entered by the Court of Appeals. On May 15, 1995, Judge Sanders suspended the sentence.
¶ 21. On May 14, 1995, Judge Sanders received a telephone call from Max Lawson, the complainant, who asked Judge Sanders to suspend the sentence of Spears because he did not want Spears to be imprisoned. Judge Sanders admitted she knew that Spears was a jury trial that was appealed and affirmed by the Court of Appeals. Judge Sanders told Lawson to have an attorney contact her. She contacted Assistant District Attorney Ronnie Harper who again stated she could do as she wanted. She also researched the law and read Miss. Code Ann. § 99-19-25 and Cassibry v. State, 453 So.2d 1298 (Miss. 1984). The next day, Bryan Harbour, counsel for Spears, presented Judge Sanders with an order suspending Spears sentence, which she signed. Judge Sanders stated that she understood § 99-19-25 to grant circuit courts jurisdiction with full authority to exercise all powers vested by the law, regardless of a Supreme Court mandate, because the statute does not mention such a mandate. Counsel for the Commission questioned Judge Sanders regarding her understanding of Harrigill v. State, which states a mandate cannot be altered. Judge Sanders stated because Harrigill was a felony case it does not apply to misdemeanor cases like Charles Spears.
¶ 22. Judge Hewes asked Judge Sanders if there was a representative of the State present when she signed the order which suspended the sentence of Charles Spears. Judge Sanders stated there was not, but that Harper knew she planned to sign the order, and he did not object. No record was made of the hearing involving Spears.
¶ 23. Parole Officer Ronnie Brown and Circuit Court Administrator Micki Smith testified, however, their testimony did not add anything to that stated above.
¶ 24. On February 9, 1996, the Commission filed its findings of fact and recommendation. On May 2, 1996, Judge Sanders filed her objections to the findings of fact.

DISCUSSION OF THE ISSUES
¶ 25. The appropriate standard of review used in a judicial disciplinary proceeding is derived from Rule 10(E) of the Rules of the Mississippi Commission on Judicial Performance, which states:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the *872 event that more than one (1) recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
Mississippi Commission on Judicial Performance v. Chinn, 611 So.2d 849, 850 (Miss. 1992); Mississippi Judicial Performance Commission v. Hopkins, 590 So.2d 857 (Miss. 1991). Although the Court is not bound by the Commission's findings, they are given great deference when based on clear and convincing evidence. Chinn, 611 So.2d at 850; Mississippi Judicial Performance Commission v. Walker, 565 So.2d 1117, 1119 (Miss. 1990).

I. DID THE CONDUCT OF JUDGE LILLIE BLACKMON SANDERS CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO § 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
¶ 26. Section 177A of the Mississippi Constitution of 1890 provides that upon recommendation of the Commission, this Court may sanction judges for "willful misconduct in office or conduct which is prejudicial to the administration of justice which brings the judicial office into disrepute." This Court has defined "willful misconduct" as follows:
Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Mississippi Commission on Judicial Performance v. Russell, 691 So.2d 929, 937 (Miss. 1997); Mississippi Commission on Judicial Performance v. Milling, 651 So.2d 531, 538 (Miss. 1995); Mississippi Commission on Judicial Performance v. Gunn, 614 So.2d 387, 390 (Miss. 1993).
¶ 27. A judge does not have the authority to suspend the execution of a sentence after it has been imposed. Fuller v. State, 100 Miss. 811, 57 So. 806 (1912). This court has stated that "the only time a trial judge can suspend a sentence is immediately after the defendant is convicted and at the time the trial judge announces and imposes sentence." Denton v. Maples, 394 So.2d 895, 898 (Miss. 1981). Further, this Court has stated that if a case is appealed to this court and affirmed, "[t]here is no authority in the circuit court, or indeed this Court, following the issuance of a mandate affirming the case, to modify a judgment and sentence theretofore imposed." Harrigill v. State, 403 So.2d 867, 868 (Miss. 1981). Miss. Code Ann. § 47-7-33 addresses the power of the circuit court to suspend sentences and place defendants on probation. This statute identifies two key areas: (1) the circuit court of original jurisdiction cannot suspend the execution of a sentence of imprisonment after the defendant has begun to serve such sentence, except for § 47-7-47; and (2) the circuit court of original jurisdiction cannot suspend a sentence and place a defendant on probation where the defendant has been previously convicted of a felony in any court in the United States.

Annie Mae Washington Binion
¶ 28. Judge Sanders stated she knowingly suspended the sentence of her former client, whom she knew to have three felony *873 convictions. This conduct is clearly prohibited by three areas of Mississippi law.
¶ 29. First, § 47-7-33(2) states that the circuit court is prohibited from suspending the sentence of a previously convicted felon and placing that felon on probation. In comparison, Judge Sanders intentionally suspended the sentence of a previously convicted felon whom she admittedly knew to have three felony convictions, a clear violation of § 47-7-33.
¶ 30. Secondly, the Denton Court stated that a trial judge can only suspend a sentence immediately after the defendant is convicted and at the time the sentence is announced and imposed. The sentences in Cause Numbers 8945 and 8946 were announced in 1989, and Judge Watson retained jurisdiction and allowed Binion to participate in the RID program. Binion was released on parole following the completion of the RID program. However, the circuit court's jurisdiction ended upon the revocation of Binion's parole because of her conviction in Cause Number 10016. Judge Sanders suspended Binion's sentences in 1995, more than five years after the announcement and imposition of sentencing.
¶ 31. Finally, the Mississippi Code of Judicial Conduct Canon 3(C)(1)(b) states that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including instances where he served as an attorney in the matter in controversy. Judge Sanders testified that she had numerous ex parte communications with Binion and Binion's new attorney beginning in January, 1995. Based upon these communications, Judge Sanders engaged in more ex parte communications as she contacted Judge Watson, the district attorney's office, Binion's parole officer and the MDOC. Judge Sanders testified that she knew that she was suspending three of Binion's sentences, but she did not know that she had suspended those sentences in which she had represented Binion in 1989, because the order listed Cause Numbers 9845 and 9846. However, based on Judge Sanders' own testimony, she had pulled the court file in Cause Numbers 8945 and 8946 prior to entering the order. Judge Sanders knew or should have known that the sentences she suspended were the same as her prior representation of Binion. A judge may not escape the penalties for improper conduct based upon an alleged mistake within a prohibited matter.
¶ 32. To her credit, Judge Sanders stated she made a mistake and now knows what the correct law is in this area. The order suspending Binion's sentence was entered May 9, 1995. Judge Sanders was first informed on May 29, 1995, that she did not have jurisdiction to enter such order and accordingly, on May 30, 1995, an order was entered rescinding the May 9, 1995, order.

Charles H. Spears
¶ 33. Charles Spears was convicted by a jury of misdemeanor disorderly conduct. Upon appeal, the Mississippi Court of Appeals affirmed and issued a mandate May 3, 1995. Judge Sanders testified that she received a telephone call from Max Lawson requesting Spears's sentence be suspended on May 14, 1995. Judge Sanders instructed Lawson to have an attorney contact her on behalf of Spears. Judge Sanders testified that she engaged in more ex parte communications and she contacted Assistant District Attorney Harper for advice. The following day, counsel for Spears presented Judge Sanders with a proposed order that would suspend the sentence of Spears. Judge Sanders signed and entered the order May 15, 1995. No hearing was held before signing the order, nor was a representative of the state present. Judge Sanders stated she knew Charles Spears's conviction and sentence had been affirmed by the Mississippi Court of Appeals.
¶ 34. Judge Sanders testified that she also relied upon Cassibry v. State, 453 So.2d 1298 (Miss. 1984), which she contends recognizes different jurisdictional rights of the circuit courts in felony and misdemeanor cases. However, her reliance on Cassibry is flawed; this case is good authority but it does not stand for what Judge Sanders proclaims. Cassibry had been convicted of a misdemeanor and given a $45,000 fine; he appealed and this Court affirmed. Cassibry v. State, 404 So.2d 1360 (Miss. 1981). Cassibry could not pay the fine, and the trial judge ordered that Cassibry be incarcerated. Cassibry appealed, *874 and this Court held that the trial court did not have the authority to alter the sentence and order that Cassibry be incarcerated. This Court stated, "Harrigill v. State, 403 So.2d 867 (Miss. 1981), and Denton v. Maples, 394 So.2d 895 (Miss. 1981), suggest that the Circuit Court is without authority to alter Cassibry's sentence that he pay a fine of $45,000.00, and we so hold." Id. at 1299. The Court explained that, although the circuit court is without authority to alter Cassibry's sentence, the circuit court is not helpless. The trial court had other methods of collecting the fine, such as requiring Cassibry to perform public service to work off his fine or an installment plan to pay the fine. Judge Sanders relies on the passage, "In the first place, this Court's jurisdiction terminated with the issuance of the mandate following the denial of Cassibry's petition for rehearing back on November 4, 1981. Upon receipt of that mandate, the Circuit Court acquired jurisdiction of the case with full authority to exercise all powers otherwise vested in it by law." Id. Obviously, Judge Sanders did not read Harrigill and Denton. In Harrigill v. State, 403 So.2d 867, 868-69 (Miss. 1981) the Court stated:
In Denton v. Maples, 394 So.2d 895 (Miss. 1981), we announced what we thought was already manifest: once a case has been appealed from the circuit court to this Court, the circuit court loses jurisdiction to amend or modify its sentence. If the case is affirmed, the lower court is issued a mandate to perform purely ministerial acts in carrying out the original sentence. There is no authority in the circuit court, or indeed this Court, following the issuance of a mandate affirming the case, to modify a judgment and sentence theretofore imposed. In the absence of some statute authorizing such modification, and presently there is none, once a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment.
When a criminal case has been completed and the term of court ends, unless the circuit court has deferred sentence, or placed the defendant upon a suspended sentence and retained jurisdiction for this specific purpose as authorized by statute, the power of the circuit court to alter or amend its sentence is terminated. If the case is duly appealed to this Court, this Court has appellate jurisdiction to either affirm, reverse and remand, or reverse and render the judgment the lower court should have rendered. It is only when the case is remanded for a new trial that the circuit court is again invested with discretionary authority with reference to that particular case.
The only avenue of relief available for people incarcerated is through the executive branch of our government, unless there is some statutory or constitutional right being violated, in which latter event to address the appropriate court by an appropriate original proceeding. Following conviction and final termination of a case, however, neither the circuit court nor this Court has power to simply review a case and decide whether or not the original sentence should be amended in any way. Any attempt to do so is a nullity. See State v. Dunn, 111 N.H. 320, 282 A.2d 675 (1971); Hulett v. State, 468 S.W.2d 636 (Mo. 1971); People v. Fox, 312 Mich. 577, 20 N.W.2d 732 (1945), 168 A.L.R. 703; 24B C.J.S. Criminal Law § 1952(7).
¶ 35. Judge Sanders defies the plain language of Cassibry and states that Harrigill and Denton do not apply to misdemeanor cases. Cassibry expressly adopted the propositions of Harrigill and Denton, thus making no distinction between felony and misdemeanor cases. Accordingly, Judge Sanders has no justification for entering the order suspending the sentence of Spears.
¶ 36. Also, Judge Sanders stated that she relied on Miss. Code Ann. § 99-19-25, which states; "The circuit courts and the county courts, in misdemeanor cases, are hereby authorized to suspend a sentence and to suspend the execution of a sentence, or any part thereof, on such terms as may be imposed by the judge of the court. Provided, the suspension of imposition or execution of a sentence hereunder may not be revoked after a period of five (5) years." Judge Sanders stated her understanding of this statute gives the circuit court authority to suspend a sentence even after an appellate court mandate *875 by the Mississippi Supreme Court or the Mississippi Court of Appeals. As explained above, this Court's holding in Denton is applicable to both felony and misdemeanor cases. Thus, Judge Sanders exercised jurisdiction with which she was not vested in the release of Spears. After the Court of Appeals affirmed Spears's conviction, Judge Sanders was without any authority or jurisdiction to alter or suspend the sentence.
¶ 37. If she was not, Judge Sanders should have made herself aware of Mississippi law, and should have known that she was prohibited from suspending the sentences of Binion and Spears.

The Mississippi Code of Judicial Conduct
¶ 38. The Commission recommends that the Court find Judge Sanders's violations of Canons 1, 2, 2 A, 2 A, 2 B, 3 A(1), 3 A(4), 3 B(1) and 3 C(1) of the Code of Judicial Conduct constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the judiciary into disrepute pursuant to § 177A of the Mississippi Constitution of 1890, as amended, and as defined by the Court. The Judicial Canons that Judge Sanders was found to have violated are presented with discussion.
¶ 39. Canon 1 of the Mississippi Code of Judicial Conduct provides:
A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
¶ 40. Judge Sanders' conduct violated the integrity and independence of the judiciary. Judge Sanders knowingly suspended the sentences of a former client, in the same matter as the earlier representation, whom she knew to have multiple felony convictions. Judge Sanders' conduct violated statutory law, case law and the Judicial Canons. Further, the release of a convicted misdemeanant, following an affirmed conviction and sentence from a superior court, fails to uphold the integrity of the judiciary. The unauthorized release of convicted criminals questions the integrity of the judiciary.
¶ 41. Canon 2 of the Mississippi Code of Judicial Conduct provides:
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
¶ 42. Commentary to this Canon states:
A judge must avoid all impropriety and appearances of impropriety. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must expect to be the subject of constant public scrutiny, and therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
¶ 43. As discussed earlier, Judge Sanders' conduct was improper and prohibited. Judge Sanders' conduct circumvented the law of this state. Although directly prohibited by law, Judge Sanders suspended the sentences of a former client, who was ineligible for release and knowingly suspended a sentence following a mandate from the Mississippi Court of Appeals that affirmed the conviction and sentence. Public confidence in the judiciary was eroded by the knowing disregard of Mississippi law by Judge Sanders. Judge Sanders' unauthorized release of the two criminals is an actual impropriety.
¶ 44. Canon 2 A provides:
A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
¶ 45. Judge Sanders did not respect and comply with Mississippi law. Judge Sanders acted without jurisdiction or authority to enter the orders which suspended the sentences of the two inmates. The conduct of Judge Sanders destroyed the public confidence in the integrity and impartiality of the judiciary.
¶ 46. Canon 2 B of the Mississippi Code of Judicial Conduct provides:

*876 A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interest of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
¶ 47. Judge Sanders allowed the prestige of her office to be used to advance private interests. The unauthorized release of a former client from confinement and the release of another prisoner upon request diminishes the public confidence in the judiciary's independence and impartiality. Judge Sanders allowed the public to believe that a former client and a county supervisor were in a special position to influence Judge Sanders, and did use their special relationships with Judge Sanders to affect her judgment.
¶ 48. Canon 3 A(1) of the Mississippi Code of Judicial Conduct provides:
A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
¶ 49. Judge Sanders admitted that she was not competent in areas of law effecting the release of Binion and Spears. Judge Sanders' failure to understand the law resulted in her failure to uphold the law of this state. Further, Judge Sanders admitted that she allowed ex parte communications to effect her decisions to enter the orders.
¶ 50. Canon 3 A(4) of the Mississippi Code of Judicial Conduct provides:
A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
¶ 51. Judge Sanders testified that she initiated and participated in many ex parte communications. She testified she now knows better, however, she did not explain why she chose not to contact a circuit court judge from another district for advice, as allowed by the Canon.
¶ 52. Canon 3 B(1) of the Mississippi Code of Judicial Conduct provides:
A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
¶ 53. Judge Sanders' conduct violated this Canon. Judge Sanders signed an order which suspended the sentence of a former client without a hearing. Further, Judge Sanders knowingly released and suspended the sentence of Spears after the Mississippi Court of Appeals had affirmed his conviction and sentence.
¶ 54. Canon 3 C(1)(b) of the Mississippi Code of Judicial Conduct provides:
A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.
¶ 55. Judge Sanders served as Binion's counsel in cause No.'s 8945 and 8946 and later suspended these sentences in her capacity as judge. Because her impartiality was reasonably questioned, Judge Sanders was disqualified in Binion's matter by this Canon.

II. SHOULD JUDGE LILLIE BLACKMON SANDERS BE PUBLICLY REPRIMANDED, FINED $1,500 AND ASSESSED THE COSTS OF THIS PROCEEDING BY THE MISSISSIPPI SUPREME COURT, PURSUANT TO § 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
*877 ¶ 56. Section 177A of the Mississippi Constitution of 1890, as amended, provides upon recommendation of the Commission, a judge may be removed, suspended, fined, publicly censured or publicly reprimanded by the Mississippi Supreme Court. The Commission has recommended that Circuit Court Judge Lillie Blackmon Sanders be publicly reprimanded, fined $1,500 and assessed the costs of this proceeding. In judicial misconduct proceedings, this Court is the trier of fact, and it has sole power to impose sanctions. In re Quick, 553 So.2d 522, 527 (Miss. 1989); In re Collins, 524 So.2d 553, 556 (Miss. 1988); In re Garner, 466 So.2d 884, 885 (Miss. 1985). Although this Court has an obligation to conduct an independent inquiry, it nonetheless gives great weight to the findings of the Commission, which has had the opportunity to observe the demeanor of the witnesses. In re Collins, 524 So.2d at 556; In re Garner, 466 So.2d at 885; See also Mississippi Judicial Performance Commission v. Walker, 565 So.2d 1117, 1119 (Miss. 1990).
¶ 57. In the case at bar, the Commission has recommended that Judge Sanders be publicly reprimanded, fined $1,500 and taxed with all costs of this proceeding. This Court approved the same sanctions in a recent, near identical matter, Mississippi Commission on Judicial Performance v. Russell. The Commission has recommended and the Court has imposed public reprimands and fines upon justice court judges for "fixing" tickets or acting in excess of their authority. See Mississippi Commission on Judicial Performance v. Underwood, 644 So.2d 458 (Miss. 1994); Gunn, 614 So.2d at 390-391.
¶ 58. Factors have been established by the Court to determine if a public reprimand should be imposed. Walker, 565 So.2d at 1125; In re Baker, 535 So.2d 47, 54 (Miss. 1988). These factors include:

(1) The length and character of the judge's public service.
¶ 59. Judge Sanders has served as Circuit Court Judge since 1995, and she held the same position during a portion of 1989-1990. No witnesses testified as to the character and public service of Judge Sanders.

(2) Positive contributions made by the judge to the courts and the community.
¶ 60. Judge Sanders offered no evidence on this factor.

(3) The lack of prior judicial precedent on the incident in issue.
¶ 61. According to Mississippi statute and case law, Judge Sanders was clearly wrong to release Binion and Spears. Judge Sanders admitted to many ex parte communications which are clearly in violation of the Judicial Canons. Judge Sanders stated she read the Judicial Canons and believed she did not violate any rules of judicial conduct; if she had read the Canons she would not have heard or issued an order in the Binion matter. Judge Sanders knew or should have known the limits of her authority. This weighs heavily in favor of public reprimand.

(4) Commitment to fairness and innovative procedural form on the part of the judge.
¶ 62. Judge Sanders offered no evidence on this factor.

(5) The magnitude of the offense.
¶ 63. Mississippi law clearly defined the limits of a circuit cNourt judge's authority. Judge Sanders' conduct of releasing two convicted defendants without authority or jurisdiction to do so represents the type of behavior that tarnishes the dignity of the judiciary before the public. This weighs heavily in favor of public reprimand.

(6) The number of persons affected.
¶ 64. It is difficult to quantify the number of persons affected. However, the improper and unauthorized release of two inmates tarnishes the image of the Mississippi Judiciary before the entire state.

(7) Whether "moral turpitude" was involved.
¶ 65. The Commission contends moral turpitude was not involved.
¶ 66. The Commission asserts Judge Sanders' misconduct is extremely serious. The sanction should recognize the misconduct, deter and discourage similar behavior, preserve the dignity and reputation of the judiciary and protect the public. Hall v. The *878 Mississippi Bar, 631 So.2d 120, 125 (Miss. 1993); The Mississippi Bar v. Hall, 612 So.2d 1075, 1077-78 (Miss. 1992); Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992); Mississippi Bar v. Strauss, 601 So.2d 840, 844 (Miss. 1992); Attorney Q v. Mississippi State Bar, 587 So.2d 228, 234 (Miss. 1991); Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363, 1366 (Miss. 1990). Having weighed each factor, we are of the opinion that a public reprimand is warranted. As previously stated, this Court has upheld a public reprimand in Russell in which the circuit court judge suspended the sentences of four inmates while lacking any authority or jurisdiction to do so. Likewise, Judge Sanders, acting without authority or jurisdiction, suspended the sentence of a former client and later released and placed a second inmate on probation after his conviction and sentence had been affirmed by a superior court. Judge Sanders' testimony that she believed she acted within her jurisdiction after having read the Judicial Canons and applicable case law is inconceivable. The facts and testimony presented support the recommendations of the Commission.

CONCLUSION
¶ 67. The conduct of Judge Sanders constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, in violation of § 177A of the Mississippi Constitution of 1890, as amended. The Commission recommends a sanction of public reprimand and a $1,500 fine pursuant to § 177A of the Mississippi Constitution. Finally, the Commission submits that costs of this proceeding should be taxed to Judge Sanders pursuant to Rule 36 of the Mississippi Rules of Appellate Procedure.
¶ 68. Judge Sanders admitted that she had knowingly released a former client, and released a second inmate although she knew that his conviction and sentence were affirmed by the Mississippi Court of Appeals. Judge Sanders relies upon her misreading of clear Mississippi law for her defense in regard to Spears, and still proclaims her innocence. Her argument is without merit. Judge Sanders admitted she had ex parte communications with Binion, Binion's attorney, the district attorney's office, and Spears's attorney. Further, Judge Sanders admitted to asking a parole officer for advice regarding Binion. Finally, Judge Sanders states her constitutional right of confrontation has been violated due to an anonymous tip to the Commission which led to the formal charges. Because Judge Sanders admitted to the misconduct of releasing Binion and Spears, this argument is without merit and does not warrant discussion. Judge Sanders' conduct is clearly prohibited by Mississippi law and the findings and recommendations of the Commission are affirmed.
¶ 69. JUDGMENT IS AFFIRMED.
PRATHER, C.J., SULLIVAN and PITTMAN, P.JJ., and BANKS, SMITH, MILLS and WALLER, JJ., concur.
McRAE, J., not participating.