# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 1, 2011

No. 10-60374

Lyle W. Cayce
Clerk

WILLIAM JOSEPH HOLLY,

Petitioner-Appellant

v.

STATE OF MISSISSIPPI; CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondents-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:98-CV-53

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant William Joseph Holly appeals the district court's denial of his federal habeas application brought pursuant to 28 U.S.C. § 2254. AFFIRMED.

## I.

Holly was indicted for capital murder, kidnapping, and grand larceny. The offense took place on July 12, 1992 at which time Holly was under the age of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60374

eighteen.  He was subsequently convicted and was sentenced to death on March 3, 1993.  His motion for a new trial was denied, and the Mississippi Supreme Court affirmed his convictions of capital murder and kidnapping and his sentence of death.[1]  *Holly v. State*, 671 So. 2d 32 (Miss. 1996).  No petition for rehearing was filed, and the Supreme Court denied his petition for a writ of certiorari.  *Holly v. Mississippi*, 518 U.S. 1025 (1996).  Holly filed a post-conviction petition in state court, which was denied by the Mississippi Supreme Court.  Holly then filed a federal habeas application on March 23, 1998.

At some point during Holly's federal habeas proceedings, the district court granted his motion to stay the proceedings pending the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005). On March 5, 2005, the Supreme Court issued its decision in *Roper*, which declared unconstitutional the "imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."  *Id.* at 578.  Thereafter, the district court vacated Holly's capital sentence.

Holly subsequently filed a motion in the Mississippi Supreme Court to remand his case for resentencing in the circuit court.  In his motion, he requested a sentence of life in prison *with* the possibility of parole, which he deemed "the only Constitutional alternative to death at the time the crime was committed."  Holly asserted that MISS. CODE ANN. § 99–19–107 — which substituted a sentence of life in prison *without* parole "[i]n the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court" — was inapplicable to his vacated death sentence.  Instead, Holly reasoned that the court should apply the version of the capital murder statute, MISS. CODE ANN. § 97–3–21, that existed at the time he committed the offense, which only provided two possible sentences: the death

---

[1] The Mississippi Supreme Court vacated the conviction of grand larceny.

No. 10-60374

penalty and life in prison with the possibility of parole. (Two years *after* Holly was convicted, § 97–3–21 had been amended to include the option of life in prison *without* the possibility of parole, but that sentence was not available at the time that Holly committed the capital offense.)  Holly thus concluded that the Mississippi Supreme Court would violate the Due Process Clause or the Ex Post Facto Clause of the Constitution if it sentenced him to life in prison without the possibility of parole.

On June 5, 2008, the Mississippi Supreme Court remanded Holly's case back to the state trial court with instructions to sentence him to life in prison *without* parole, pursuant to § 99–19–107.  The court did not address the merits of Holly's constitutional claims, and he was resentenced pursuant to the Mississippi Supreme Court's instructions.

On March 20, 2009, Holly filed a motion to amend his federal habeas application, seeking relief on the same constitutional grounds that were rejected by the Mississippi Supreme Court.  The district court denied his application but granted him a certificate of appealability on "[w]hether, in resentencing [ ] Holly to life in prison without parole, the Mississippi Supreme Court violated Holly's constitutional rights by failing to recognize or enforce the *ex post facto* clause . . . as well as the Due Process Clauses of the Fifth and Fourteenth Amendments."  This appeal followed.

## II.

## A.

Holly filed his federal habeas application after 1996, so it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Lindh v. Murphy*, 521 U.S. 320, 324–26 (1997).  First, as a matter of jurisdiction, we

3

No. 10-60374

consider sua sponte[2] whether Holly has exhausted his federal habeas claims in state court.

Under the AEDPA, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). We have explained that "[t]he exhaustion requirement is satisfied when the substance of the federal claim has been fairly presented to the highest state court." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). "Such presentment can take place via direct appeal or state habeas proceedings." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (citing *Orman v. Cain*, 228 F.3d 616, 620 (5th Cir. 2000)). It follows then that a petitioner need not always raise a claim in state post-conviction proceedings to exhaust that claim for AEDPA purposes. That said, the claim must have been presented to the state's highest court "in a procedurally proper manner according to the rules of the state courts." *Mercadel*, 179 F.3d at 275 (quotation marks and citation omitted).

Here, Holly raised his constitutional claims regarding resentencing in his motion for resentencing, which he filed directly in the Mississippi Supreme Court. When that court denied his requested sentence, Holly amended his federal application for habeas relief to include his resentencing claims, without first raising the claims in state post-conviction proceedings. The question then is whether Holly presented his claims to the Mississippi Supreme Court in a procedurally proper manner.

In fact, the Mississippi Supreme Court addressed this very procedural issue in *Foster v. State*, 961 So. 2d 670 (Miss. 2007) (en banc). There, as in the instant case, the defendant was seventeen years old at the time he committed the capital offense for which he was sentenced to death. *Id.* at 671. Following

---

[2] Neither the district court in denying relief nor the parties in their arguments to this court explicitly raised the issue of exhaustion.

No. 10-60374

*Roper*, the State filed a motion directly in the Mississippi Supreme Court to vacate the defendant's death sentence and resentence him pursuant to § 99–19–107, but the defendant never responded to the State's motion with any constitutional objections. *Id.* As a result, when the defendant later attempted to appeal his resentencing by the trial court, the Mississippi Supreme Court held:

> The execution of orders issued by this Court is a purely ministerial act, and lower courts have no authority to alter or amend them. *See, e.g.*, *Miss. Comm'n on Judicial Performance v. Sanders*, 708 So. 2d 866, 874 (Miss. 1998). Instead, [the defendant's] claim should have been raised in a response to the State's motion to this Court under Miss. R. App. P. 27(a), or, in the alternative, in a motion for reconsideration of a motion under Miss. R. App. P. 27(h), or in a motion for rehearing under Miss. R. App. P. 40, after we granted the State's motion. His failure to do so bars his claim.

*Id.* at 671–72. As such, the Mississippi Supreme Court itself has determined that it was procedurally proper for Holly to raise his constitutional claims in his motion for resentencing; that, in fact, it was the only procedurally proper way to do so. We thus conclude that Holly has exhausted state remedies, even though he never raised his constitutional claims in state post-conviction proceedings.

## B.

Holly's federal habeas application, nevertheless, comes to us in an unusual procedural posture that implicates our standard of review. Given the fact that a state court never addressed Holly's constitutional claims in post-conviction proceedings and the Mississippi Supreme Court did not address the merits of his claims when ordering his resentencing, we are left to consider Holly's claims without the benefit of a state court's analysis. Accordingly, we do not apply the deferential standard of review that applies under the AEDPA to "any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

No. 10-60374

and instead we review Holly's constitutional claims de novo. *Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009). *Accord Hatten v. Quarterman*, 570 F.3d 595, 599–600 (5th Cir. 2009).

## C.

Holly asserts that the Mississippi Supreme Court violated his rights under the Due Process Clause when it resentenced him to life in prison without the possibility of parole.[3] The U.S. Supreme Court has explained that a state criminal statute violates the Due Process Clause if it is not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Bouie v. City of Columbia,* 378 U.S. 347, 351 (1964) (quotation marks and citation omitted). As an extension of that principle, "a deprivation of the right of fair warning can result . . . also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Id.* at 352. "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." *Id.* at 354 (internal quotation marks and citation omitted). Here, we must determine whether the Mississippi Supreme Court's construction of § 99–19–107 in *Foster* was "unexpected and indefensible" by reference to the plain statutory language of § 99–19–107.

Section 99–19–107 was enacted in 1977 in response to national

---

[3] On appeal, Holly does not raise an independent Ex Post Facto Clause claim, conceding that "the text of the Ex Post Facto Clause is limited to legislative action." (citing *Marks v. United States*, 430 U.S. 188, 191 (1977) ("The Ex Post Facto Clause is a limitation upon the powers of the Legislature . . . and does not of its own force apply to the Judicial Branch of government.")). Holly does maintain, however, that "the same underlying considerations are applicable to state courts through the Due Process Clause of the Fourteenth Amendment," (citing *Proctor v. Cockrell*, 283 F.3d 726, 730 (5th Cir. 2002)), so we will only consider ex-post-facto concerns to that extent.

No. 10-60374

uncertainty surrounding the constitutionality of the death penalty.[4] As of July 12, 1992, when Holly committed the capital offense, § 99–19–107 stated:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life, and such person shall not be eligible for parole.

Since the time when Holly committed the capital offense, the Mississippi Supreme Court has construed the applicability of § 99–19–107 in two relevant en banc opinions: (1) *Abram v. State*, 606 So. 2d 1015 (Miss. 1992) (en banc), and (2) *Foster v. State*, 961 So. 2d 670 (Miss. 2007) (en banc).

In *Abram*, the Mississippi Supreme Court considered the applicability of § 99–19–107 to a capital defendant whose jury-imposed sentence of death had been set aside by the trial court on grounds that the record lacked sufficient evidence to support the death penalty in that case. 606 So. 2d at 1039. The trial court determined that § 99–19–107 could be applied on a case-by-case basis, but the Mississippi Supreme Court disagreed, holding:

> Although there are no cases addressing the precise application of § 99-19-107, we think it fairly obvious that it is reserved for that event when either this Court or the United States Supreme Court makes a wholesale declaration that the death penalty in general, and/or our own statutory death penalty scheme in particular, is unconstitutional. This section is not reasonably or logically intended for use on a case by case basis by trial courts or this Court . . . .

*Id.* The Mississippi Supreme Court then concluded that "the only logical alternative once the jury verdict was disregarded would have been to impose a sentence of life imprisonment." *Id.* (citation omitted).

---

[4] *See Furman v. Georgia*, 408 U.S. 238 239–40 (1972) (holding that the death penalty scheme in Georgia constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments); *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (holding that imposition of the death penalty for the crime of murder did not, under all circumstances, violate the Eighth and Fourteenth Amendments).

No. 10-60374

Fifteen years later, in *Foster*, the Mississippi Supreme Court again considered the applicability of § 99–19–107 in the wake of *Roper* under facts substantially similar to the instant case. The court reexamined the language of § 99–19–107 (and its own holding in *Abram*) in the context of *Roper*, which did not declare the death penalty unconstitutional in *all* cases, but also did not vacate one single death sentence on a case-by-case basis. The Mississippi Supreme Court concluded: "The language of the statute is clear; it intends to provide for an alternative sentence for a person whose death sentence has been deemed unconstitutional." *Foster*, 961 So. 2d at 672. Acknowledging that certain language in *Abram* was potentially at odds with this conclusion, the court further held: "To the extent that *Abram* is inconsistent with the plain meaning of section 99-19-107, it is hereby overruled." *Id.* The Mississippi Supreme Court then resentenced the defendant in accordance with § 99–19–107 — and not the pre-1994 version of § 97–3–21 — reasoning that "[b]ecause [the defendant's] death penalty was found unconstitutional by the United States Supreme Court's ruling in *Roper*, the application of section 99-19-107 is appropriate." *Id.*

**D.**

Holly asserts that the Mississippi Supreme Court violated his due process rights by "unexpected[ly] and indefensibl[y]" expanding the "narrow and precise statutory language" of § 99–19–107 in *Foster* and applying that construction to him retroactively. We note at the outset that *both Abram* and *Foster* were decided *after* Holly committed the underlying capital offense. Our inquiry, therefore, is *not* whether the Mississippi Supreme Court unexpectedly and indefensibly expanded its construction of § 99–19–107 from that in *Abram* to that in *Foster*, but rather whether *Foster* (the judicial construction applied to Holly) unexpectedly and indefensibly expanded the statutory language of § 99–19–107 as it existed at the time Holly committed the capital offense.

8

No. 10-60374

Holly's main argument is that the Mississippi Supreme Court's construction of § 99–19–107 in *Foster* is "directly at odds with the language of § 99–19–107." In particular, Holly asserts that, because § 99–19–107 only applies "[i]n the event the *death penalty* is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court," MISS. CODE ANN. § 99–19–107 (emphasis added), it would be unexpected and indefensible for § 99–19–107 to be applied when the *death sentence* of only one offender (or one class of offenders) is held to be unconstitutional. We disagree.

As the Mississippi Supreme Court made clear in *Foster*, § 99–19–107 plainly functions "to provide for an alternative sentence" if the death penalty (to which the defendant had previously been sentenced) is later declared to be unconstitutional. 961 So. 2d at 672. Section 99–19–107 thus gives instructions for that which a court should do if "the court having jurisdiction over a person previously sentenced to death" must resentence the person under such circumstances. In that sense, and only in that sense, may § 99–19–107 apply to an individual defendant. In fact, *Abram* is instructive on this point. The *Abram* court recognized that the plain language of § 99–19–107 "obvious[ly]" indicated that the statute only applied to "a wholesale declaration" of unconstitutionality, i.e., it was "not reasonably or logically intended for use on a case by case basis." 606 So. 2d at 1039. Given this dichotomy of possible circumstances, *Roper* clearly was a "wholesale declaration" that the *death penalty* is unconstitutional as applied to juveniles; obviously, *Roper* neither held only that Holly's *death sentence* is unconstitutional, nor vacated Holly's death sentence because of any error particular to the unique facts of his case. *Roper* categorically held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the *death penalty* on offenders who were under the age of 18 when their crimes were committed." 543 U.S. at 578 (emphasis added). Consequently, the death penalty has been "held to be unconstitutional by . . . the United States Supreme Court"

9

No. 10-60374

as to those offenders whose death sentence is come within the plain language of § 99–19–107.

At bottom, the Mississippi Supreme Court's construction of § 99–19–107 in *Foster* was not "unexpected and indefensible" by reference to the law (the text of § 99–19–107) as expressed prior to Holly's commission of the capital offense. To the contrary, Holly had fair warning when he committed his offense that § 99–19–107 would apply to him if the death penalty were ever "held to be unconstitutional," as it later was for juvenile offenders in *Roper*. The Mississippi Supreme Court thus constitutionally applied § 99–19–107, pursuant to *Foster*, in resentencing Holly.

### III.

For the foregoing reasons, Holly's federal application for habeas relief is denied and the judgment of the district court is AFFIRMED.