RABE *v.* WASHINGTON

No. 71-247.  Argued February 29, 1972—Decided March 20, 1972

*William L. Dwyer* argued the cause and filed briefs for petitioner.

*Curtis Ludwig* argued the cause for respondent.  With him on the brief was *Herbert H. Davis.*

Briefs of *amici curiae* urging reversal were filed by *Stanley Fleishman* and *Sam Rosenwein* for the National Association of Theatre Owners, Inc., and by *Louis Nizer* and *James Bouras* for the Motion Picture Association of America, Inc.

*Constantine Regusis* filed a brief for Morality in Media, Inc., as *amicus curiae,* urging affirmance.

PER CURIAM.

Petitioner was the manager of the Park Y Drive-In Theatre in Richland, Washington, where the motion picture Carmen Baby was shown.  The motion picture is a loose adaptation of Bizet's opera Carmen, con-

taining sexually frank scenes but no instances of sexual consummation are explicitly portrayed. After viewing the film from outside the theater fence on two successive evenings, a police officer obtained a warrant and arrested petitioner for violating Washington's obscenity statute. Wash. Rev. Code § 9.68.010. Petitioner was later convicted and, on appeal, the Supreme Court of Washington affirmed. 79 Wash. 2d 254, 484 P. 2d 917 (1971). We granted certiorari. 404 U. S. 909. We reverse petitioner's conviction.

The statute under which petitioner was convicted, Wash. Rev. Code § 9.68.010, made criminal the knowing display of "obscene" motion pictures:

"Every person who—

"(1) Having knowledge of the contents thereof shall exhibit, sell, distribute, display for sale or distribution, or having knowledge of the contents thereof shall have in his possession with the intent to sell or distribute any book, magazine, pamphlet, comic book, newspaper, writing, photograph, motion picture film, phonograph record, tape or wire recording, picture, drawing, figure, image, or any object or thing which is obscene; or

"(2) Having knowledge of the contents thereof shall cause to be performed or exhibited, or shall engage in the performance or exhibition of any show, act, play, dance or motion picture which is obscene;

"Shall be guilty of a gross misdemeanor."

In affirming petitioner's conviction, however, the Supreme Court of Washington did not hold that Carmen Baby was obscene under the test laid down by this Court's prior decisions. *E. g., Roth* v. *United States,* 354 U. S. 476; *Memoirs* v. *Massachusetts,* 383 U. S. 413. Uncertain "whether the movie was offensive to the standards relating to sexual matters in that area and whether

the movie advocated ideas or was of artistic or literary value," the court concluded that if it "were to apply the strict rules of *Roth,* the film 'Carmen Baby' probably would pass the definitional obscenity test if the viewing audience consisted only of consenting adults." 79 Wash. 2d, at 263, 484 P. 2d, at 922. Respondent read the opinion of the Supreme Court of Washington more narrowly, but nonetheless implied that because the film had "redeeming social value" it was not, by itself, "obscene" under the *Roth* standard. The Supreme Court of Washington nonetheless upheld the conviction, reasoning that in "the *context* of its exhibition," Carmen Baby was obscene. *Ibid.*

To avoid the constitutional vice of vagueness, it is necessary, at a minimum, that a statute give fair notice that certain conduct is proscribed. The statute under which petitioner was prosecuted, however, made no mention that the "context" or location of the exhibition was an element of the offense somehow modifying the word "obscene." Petitioner's conviction was thus affirmed under a statute with a meaning quite different from the one he was charged with violating.

"It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole* v. *Arkansas,* 333 U. S. 196, 201. Petitioner's conviction cannot, therefore, be allowed to stand. *Gregory* v. *City of Chicago,* 394 U. S. 111; *Garner* v. *Louisiana,* 368 U. S. 157; *Cole* v. *Arkansas, supra.*

Under the interpretation given § 9.68.010 by the Supreme Court of Washington, petitioner is criminally punished for showing Carmen Baby in a drive-in but he may exhibit it to adults in an indoor theater with impunity. The statute, so construed, is impermissibly vague as applied to petitioner because of its failure to

give him fair notice that criminal liability is dependent upon the place where the film is shown.

What we said last Term in *Cohen* v. *California,* 403 U. S. 15, 19, answers respondent's contention that the peculiar interest in prohibiting outdoor displays of sexually frank motion pictures justifies the application of this statute to petitioner:

> "Any attempt to support this conviction on the ground that the statute seeks to preserve an appropriately decorous atmosphere in the courthouse where Cohen was arrested must fail in the absence of any language in the statute that would have put appellant on notice that certain kinds of otherwise permissible speech or conduct would nevertheless, under California law, not be tolerated in certain places. . . . No fair reading of the phrase 'offensive conduct' can be said sufficiently to inform the ordinary person that distinctions between certain locations are thereby created."

We need not decide the broad constitutional questions tendered to us by the parties. We hold simply that a State may not criminally punish the exhibition at a drive-in theater of a motion picture where the statute, used to support the conviction, has not given fair notice that the location of the exhibition was a vital element of the offense.

The judgment of the Supreme Court of Washington is

*Reversed.*

Mr. Chief Justice Burger, with whom Mr. Justice Rehnquist joins, concurring.

I concur solely on the ground that petitioner's conviction under Washington's general obscenity statute cannot, under the circumstances of this case, be sustained consistent with the fundamental notice requirements of

the Due Process Clause. The evidence in this case, however, revealed that the screen of petitioner's theater was clearly visible to motorists passing on a nearby public highway and to 12 to 15 nearby family residences. In addition, young teenage children were observed viewing the film from outside the chain link fence enclosing the theater grounds. I, for one, would be unwilling to hold that the First Amendment prevents a State from prohibiting such a public display of scenes depicting explicit sexual activities if the State undertook to do so under a statute narrowly drawn to protect the public from potential exposure to such offensive materials. See *Redrup* v. *New York,* 386 U. S. 767 (1967).[1]

Public displays of explicit materials such as are described in this record are not significantly different from any noxious public nuisance traditionally within the power of the States to regulate and prohibit, and, in my view, involve no significant countervailing First Amendment considerations.[2] That this record shows an offensive nuisance that could properly be prohibited, I have no doubt, but the state statute and charge did not give the notice constitutionally required.

---

[1] For examples of recent statutes regulating public displays, see Ariz. Rev. Stat. Ann. § 13–537 (Supp. 1971–1972); N. Y. Penal Law §§ 245.10–245.11 (Supp. 1971–1972).

[2] Under such circumstances, where the very method of display may thrust isolated scenes on the public, the *Roth* v. *United States,* 354 U. S. 476, 489 (1957), requirement that the materials be "taken as a whole" has little relevance. For me, the First Amendment must be treated in this context as it would in a libel action: if there is some libel in a book, article, or speech we do not average the tone and tenor of the whole; the libelous part is not protected.