**Steven GLORIA, Petitioner,**

v.

**David C. MILLER, Respondent.**

Civ. No. 86–2234–T.

United States District Court,
W.D. Oklahoma.

April 16, 1987.

 

9. *See* Transcript of Oral Deposition of Evelyn Jewett at p. 9.

Steven Gloria, pro se.

Michael C. Turpen, Atty. Gen., and Robert A. Nance, Asst. Atty. Gen., Oklahoma City, Okl., for respondent.

## MEMORANDUM OPINION

RALPH G. THOMPSON, Chief Judge.

This is a pro se petition for a Writ of Habeas Corpus under 28 U.S.C. Section 2254 filed by the Petitioner, who is a prisoner currently incarcerated by the State of Oklahoma. Petitioner was sentenced on September 4, 1985, to a term of three years imprisonment following his entry of a plea of nolo contendere to a charge of Escape from a Penal Institution in the District Court of Pottawatomie County, Oklahoma. (Case No. CRF 85–155).

Petitioner seeks review of the following grounds for relief:

(1) "Violation of [his] immunity or freedom from Ex Post Facto application of law and concurrent violation of his privileges and immunities" based on his claim that "[a]fter the alleged offense was committed his status was altered from 'House Arrest' to 'Trusty' by state officials to perfect information that would appear criminal or be placed within jurisdiction of criminal statutory provisions."

(2) "Violation of [his] right to Due Process under the 5th Amendment and concurrent violation of [his] privilages (sic) and immunities under the 14th amendment" based on the allegation that "the trial court failed to elicit any fact from the petitioner to see if any valid defense existed."

(3) "Violation of concurrent rights against 'Double Punishment' and 'Multiple Punishment' under the 5th Amendment and or statutory right given by Title 21 O.S. Section 11 of the state statues (sic)" based on the claim that "Petitioner suffered punishment under disciplinary procedings, (sic) from institutional staff under authority of Title 57 O.S. Section 510.8 and 21 O.S. Section 443(a) and was then brought before the District Court of Pottawatomie County (CRF–85–155) to impose more punishment."

Petitioner's Application for Post-Conviction Relief raising the above grounds for relief was denied by the District Court in Pottawatomie County, Oklahoma, by Order entered March 25, 1986. The denial of post-conviction relief was affirmed by the Oklahoma Court of Criminal Appeals. *Glo-*

*ria v. State,* No. PC–86–283 (Okl.Cr. May 27, 1986). The Respondent has filed his Response to the Petition and, in his Response to the Court's Order to expand the record, has submitted the transcript of the plea proceeding held in Petitioner's state court case on September 4, 1985 before District Judge Glenn Dale Carter.

I

█ Preliminarily, federal habeas review of this state prisoner's claims may be precluded because Petitioner plead nolo contendere to the charge brought against him. Additionally, in the denial of the Petitioner's Application for Post-Conviction Relief, the state courts found Petitioner did not follow state procedures for collaterally attacking his conviction. However, the state district and appellate courts relied on this procedural default only as an alternative ground for denying Petitioner's Application for Post-Conviction Relief. Because the state courts also reviewed the merits of Petitioner's claims,[1] Petitioner's procedural default does not raise the issue of preclusion. *Engle v. Isaac,* 456 U.S. 107, 135 n. 44, 102 S.Ct. 1558, 1575 n. 44, 71 L.Ed.2d 783 (1982).

█ Under Oklahoma law, the entry of a plea of nolo contendere has the equivalent legal effect of a plea of guilty. 22 O.S.1981 Section 513. When a defendant pleads guilty to state criminal charges, federal habeas relief on the basis of constitutional claims antecedent to and independent of the guilty plea is foreclosed. E.g., *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). However, a defendant's attack of his state court conviction following a guilty plea through a federal writ of habeas corpus is not barred where the challenge is "to the very power of the state to bring the defendant into court to answer the charge brought against him." *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974). Thus, "where the state is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (per curiam). In explanation of the foregoing distinction in the context of the double jeopardy claim raised therein, the Court in *Menna* stated the following:

> "The point of [*Tollett* and its progeny] is that a counseled plea of guilty is an admission of factual guilt so reliable that where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the state's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the state may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim.
>
> We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—judged on

---

1. As to the merits of Petitioner's first claim, the district court found that Petitioner admitted restraints on his freedom and was constructively within the purview of 21 O.S.1981 Section 443, and therefore he was not entitled to relief. The appellate court affirmed the denial of post-conviction relief on this ground, finding that Petitioner had no standing to question the applicability of Section 443 to his case because "he pled nolo contendere which is tantamount to a plea of guilty."

The district court concluded that Petitioner was not entitled to relief on his second ground because his plea of nolo contendere was voluntarily made and the requirements in *King v. State,* 553 P.2d 529 (Okl.Cr.1976), were not applicable to a nolo plea.

The Court of Criminal Appeals affirmed the conclusion of the trial court but found that the guidelines set forth in *King v. State, supra,* for determining voluntariness of a plea were applicable to Petitioner's nolo plea. *Ligon v. State,* 712 P.2d 74 (Okl.Cr.1986).

The district court and the appellate court found that Petitioner's double jeopardy claim was without merit and frivolous.

its fact—the charge is one which the state may not constitutionally prosecute."

*Id.* at 62–63 n. 2, 96 S.Ct. at 242 n. 3. The effect of the guilty plea on a subsequent collateral attack is the same whether the challenge is grounded in due process or double jeopardy when the right asserted goes to the government's power to file charges. *United States v. Broce,* 781 F.2d 792, 795 n. 1 (10th Cir.1986).

Although the Supreme Court in *Menna* did not conclude that a double jeopardy claim can never be waived, the Tenth Circuit has held that a guilty plea does not waive a double jeopardy claim because "... a defendant's guilty plea cannot confer authority upon the government to do what the Constitution prohibits." *Id.* at 795.

Petitioner challenges the state's authority to convict him as a "Trustee" when his actual status at the time of his arrest was "House Arrest." Interpreting Petitioner's pro se claim liberally, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), Petitioner claims a violation of due process based on his conviction for conduct that doesn't fall within the specific acts proscribed by the statute under which he was convicted. This statute reads as follows:

> "Any person having been imprisoned awaiting trial or having been sentenced to confinement with the Department of Corrections who escapes from such confinement, either while actually confined therein, or while permitted to be at large as a trusty, or while awaiting transportation thereto, is punishable by imprisonment for a term of not less than one (1) year nor more than seven (7) years, however, an escape by an inmate confined in any institution or facility operated by the Department of Corrections shall be punishable by imprisonment of not less than two (2) years or more than seven (7) years."

21 O.S.1981 Section 443.

## II

The Oklahoma Court of Criminal Appeals has construed the statute under which Peti-

tioner was convicted to include any voluntary departure from the custody of the penal institution of which the person is incarcerated whether the inmate be temporarily outside the walls of the institution, and while the institution retains some supervision directly or indirectly over the inmate. *State v. Little Raven,* 537 P.2d 448, 452–453 (Okl.Cr.1975). Thus, an "inmate of a state penal institution remains constructively an inmate of that institution even though the escapes from another place that he has been transferred to." *Boone v. State,* 642 P.2d 270, 272 (Okl.Cr. 1982). In *Wallace v. State,* 529 P.2d 548, 550 (Okl.Cr.1974), in which the appellate court held that an escape from the Ouchita Vocational Technical Camp by an inmate transferred there from Oklahoma State Reformatory falls within the conduct proscribed in 21 O.S. Section 443, the Court of Criminal Appeals stated: "The status of a prisoner or inmate who has been sentenced to a state penitentiary is not subsequently altered by a transfer to another institution, work release center or any other institution under the Department of Corrections." *Id.* at 550. *See also Goodson v. State,* 562 P.2d 521, 525 (Okl.Cr.1977) (Defendant assigned to Oklahoma State Penitentiary and granted medical leave was still under custody and control of the Department of Corrections and thus any escape made while under such control is properly an escape from a penal institution and properly in the purview of Section 443).

The house arrest program is a recent enactment of the Oklahoma legislature designed to relieve overcrowding in the state's prisons. However, the house arrest program is not probation or parole. The Act creating the program limits house arrestees to persons "in the custody of the Department of Corrections" who meet certain requirements, e.g., they are incarcerated for nonviolent offenses. 57 O.S.1987 Section 510.2.

█ The plea transcript and state court records in Petitioner's case shed no light on his claim that his security classification was changed by the Department of Corrections after his arrest in order to place him

in "Trusty" status and bring him within the criminal statute. However, even if such a change occurred, the assignment by the Department of Corrections of a security classification is a necessary adjunct of the exercise of discretion by the Department of Corrections within its responsibility to manage inmates in the custody of the Department. *Julien v. Meachum,* 618 F.Supp. 49, 52 (W.D.Okl.1985). There is no arbitrariness or abuse of discretion in the assignment of extra security points to an inmate who has escaped. *Id.*

The remaining issue raised by Petitioner's pleadings is whether the application of the escape statute to Petitioner's conduct violated due process. The issue is complicated by the fact that the Oklahoma legislature has amended the escape statute to explicitly include and proscribe escape from confinement in three situations, including escape while actually confined in the institution, while permitted to be at large as a trusty, and "... while assigned to the house arrest program authorized by Section 510.2 of Title 57 of the Oklahoma Statutes ..." 21 O.S.1986 Section 443 (effective November 1, 1986). The amendment prescribes punishment of two to seven years imprisonment and also defines escape for those on house arrest. Under the amended statute, an "inmate assigned to house arrest shall be considered to have escaped if the inmate cannot be located within a twenty-four-hour period or if he fails to report to a confining facility or institution, as directed." *Id.*

Although there is no legislative history accompanying the amendment, it is apparent that the legislature found such a change necessary to expressly cover the status of the house arrestee. Furthermore, the explicit inclusion of house arrest as a form of confinement represents at least an implied recognition by the legislature that the prior statute did not extend to this status.

■ Because Petitioner was charged and convicted under the *old* law prior to the amendment, and because there is no claim or indication that the provisions of the amended law were used either to impose or

increase Petitioner's punishment for acts he committed prior to the effective date of the amendment, the law itself cannot be an ex post facto law. However, this does not answer the question whether judicial expansion of the old law created an ex post facto law.

Respondent argues that judicial construction of the escape statute by the Oklahoma Court of Criminal Appeals renders Petitioner's claim meritless. Respondent relies on *McCoy v. State,* 536 P.2d 1309 (Okl.Cr. 1975), in which a state inmate argued that there is no statutory authority under 21 O.S.1971 Section 443, as amended, to prosecute one for escape from a place other than the penal institutions described in the statute itself. The appellate court disagreed with the inmate, stating that "... one may be considered in 'custody' within the meaning of the statute though outside of his place of confinement as long as some restraint upon his freedom remains ... Thus any departure from such restraint or control, with or without force, whether from the lawful custody of an officer or from any place where one is lawfully confined may be adjudged an escape, and as such, an act coming within the purview of the aforementioned statute." *Id.* at 1313 (citations omitted). *McCoy* involved an escape from a hospital to which McCoy had been transported for medical treatment.

The Respondent cites no precedent, and none can be located, applying the former statute to house arrest. Nevertheless, Petitioner admitted in his state court pleadings that the Department of Corrections had placed "some restraint" on his freedom by requiring him to obey rules and regulations prescribed for house arrestees and report on a regular basis to a correctional officer.

■ Judicial expansion of a criminal statute may create a law with the same effect as an ex post facto law. As the Supreme Court has recognized, the "fundamental principle that the required criminal law must have existed when the conduct in issue occurred, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures."

*Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964) (citation omitted). Thus, "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law ... If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a state supreme court is barred by the Due Process Clause from achieving the same result from judicial construction." *Id.* at 353–354, 84 S.Ct. at 1702. "The Ex Post Facto Clause is based on the principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). "As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment." *Id.* at 192, 97 S.Ct. at 993. *See Bouie v. City of Columbia, supra,* 378 U.S. at 350–355, 84 S.Ct. at 1700–1703; *Rabe v. Washington,* 405 U.S. 313, 315, 92 S.Ct. 993, 994, 31 L.Ed.2d 258 (1972) (per curiam).

■ Considering the broad judicial construction given the escape statute by the Oklahoma Court of Criminal Appeals prior to Petitioner's offense, it cannot be said that Petitioner did not have 'fair warning' that his conduct would result in a criminal charge. Nor was it unforeseeable that the statute as construed would be applied to Petitioner's conduct. Indeed, the legislature's amendment of the escape statute may very well have been nothing more than a recognition of judicial construction of the statute, extending its proscription to any individual who can be said to be in the custody of the Department of Corrections. Furthermore, the statute under which Petitioner was charged was less onerous than the punishment under the amended law. Thus, Petitioner has not shown that the court's judicial expansion of the *old* law to cover his status disadvantaged him.

Accordingly, this Court finds that Petitioner's claim does not establish a constitutional violation.

## III

Petitioner claims that the trial court violated his right to due process under the Fifth and Fourteenth Amendments by failing to determine that a factual basis existed for his plea of nolo contendere "to see if any valid defense existed."

■ Petitioner's reliance on an alleged error of state law, *e.g., King v. State,* 553 P.2d 529 (Okl.Cr.1976), is misplaced. The requirements of state law are not always consistent with the rights guaranteed a defendant under the United States Constitution. Habeas relief is unavailable for perceived errors of state law, unless a violation of the Constitution or laws or treaties of the United States is shown. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); 28 U.S.C. Section 2254(a). Although the legal *effect* of a nolo plea and a guilty plea are identical, it does not follow that the procedural requirements for accepting the two pleas are the same. Indeed, the purpose of the plea of nolo contendere, to allow a defendant to enter a plea *without* admitting guilt, is wholly inconsistent with the reason for requiring a factual basis for a guilty plea. The validity of a guilty plea is premised on the voluntariness and understanding of the plea. Although someone entering a plea of nolo contendere should, of course, intelligently enter the plea, public interest in assuring that a factual basis exists for the plea is not as great since the defendant is not admitting guilt by entering a nolo plea.

The Supreme Court has recognized the distinctive difference, both substantively and procedurally, between the two pleas in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1971), a case that dealt with the voluntariness of a guilty plea but also discussed and applied the Court's prior decisions involving pleas of nolo contendere:

"Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced

with grim alternatives, is willing to waive his trial and accept the sentence."

*Id.* at 36, 91 S.Ct. at 167.

"... Throughout its history, that is, the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Fed.Rule Crim. Proc. 11 preserves this distinction in its requirement that a court cannot accept a guilty plea 'unless it is satisfied that there is a factual basis for the plea'; there is no similar requirement for pleas of *nolo contendere,* since it was thought desirable to permit defendants to plead *nolo* without making any inquiry into their actual guilt. See Notes of Advisory Committee to Rule 11."

*Id.* at 35–36 n. 8, 91 S.Ct. at 166–167 n. 8.

■ The transcript of the plea proceeding in Petitioner's case firmly supports the conclusion that Petitioner's plea was voluntarily and knowingly made. Petitioner's counsel informed the court that in his judgment Petitioner was able to freely, knowingly and intelligently enter a plea. Petitioner responded affirmatively when asked by the trial court if he understood that by entering the plea he was waiving or giving up any defense he may have that he did not commit the offense. Petitioner responded affirmatively when asked whether he understood that whether he did or did not commit the offense would become irrelevant and that the Court would find him guilty and assess punishment within the range prescribed by the legislature. The transcript does not show that the trial court expressly informed the Petitioner of the nature of the charge against him. Nevertheless, under *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976), Petitioner must be presumed to have been informed, either by his lawyer or at one of the pre-sentencing proceedings, of the charge against him.

Accordingly, this Court finds that Petitioner's claim does not establish a constitutional deprivation.

## IV

Petitioner's final claim is that his conviction for escape violated the double jeopardy clause of the Constitution and/or Oklahoma law because it followed punishment he received under disciplinary proceedings from institutional staff. The Oklahoma Court of Criminal Appeals found this claim "frivolous" in its opinion denying him post-conviction relief.

■ As stated hereinabove, Petitioner's claim of a perceived error of state law is not cognizable in a federal habeas action. Additionally, it is well-established that administrative punishment imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the prohibition against double jeopardy. *See, e.g., United States v. Acosta,* 495 F.2d 60 (10th Cir.1974); *Orosco v. United States,* 526 F.Supp. 756 (W.D.Okl.1981). Petitioner's claim is without merit.

This Court finds that Petitioner has failed to allege a deprivation of rights guaranteed by the Constitution. Accordingly, judgment will issue denying the Writ of Habeas Corpus and dismissing the Petition for Writ of Habeas Corpus.