Revised March 15, 2002

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————————————

No. 00-20698

———————————————————————————

Aaron Dwayne PROCTOR,
and Jonathon L. LEMELL,

Petitioners-Appellants,

V.

Janie COCKRELL, Director
Texas Department of Criminal Justice,
Institutional Division

Respondent-Appellee.

————————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————————————————————————

March 12, 2002

Before KING, Chief Judge, DAVIS and MAGILL,[*] Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Aaron Proctor and Jonathon Lemell appeal from the district court's denial of their petitions for writs of habeas corpus under 28 U.S.C. §2254. Petitioners argue that the Texas Court of Criminal Appeals' retroactive application of a new judicial interpretation of Texas law shifting the burden of proof to the

———————————————

[*] Circuit Judge for the Eighth Circuit, sitting by designation.

defendant to establish the statute of limitations as a defense violates the Due Process Clause of the Fourteenth Amendment. Under the standard of review provided in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this case, we conclude that the decision of the Texas Court of Criminal Appeals was not "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  Accordingly, we affirm the district court's denial of habeas relief.

I.

On January 29, 1982, five men, including Aaron Proctor and Jonathon Lemell, robbed Wing K. Lew, Yit Oi Lew (Wing's wife), and Gloria Windom at gunpoint in the small grocery store that the Lews operated in Houston, Texas.  During the robbery, Proctor shot Mr. Lew in the head and killed him.

The case reaches us following an extensive procedural history.  On July 29, 1982, a Texas grand jury indicted petitioners for aggravated robbery of Mr. Lew by placing Ms. Lew in fear of imminent bodily injury or death.  A jury found petitioners guilty of the aggravated robbery offense.  The Texas Fourteenth Court of Appeals reversed the convictions, however, because of error in the jury selection process.

On January 8, 1988, almost six years after the commission of the offense, a grand jury again indicted petitioners, this time

for aggravated robbery of Mr. Lew by causing serious bodily injury to *him*. The jury again found petitioners guilty.

While the jury was deliberating at the punishment stage of the trial, petitioners moved for a directed verdict of acquittal on the ground that the state had failed to prove beyond a reasonable doubt that the prosecution was brought within the five-year statute of limitations period for aggravated robbery. Petitioners argued that because the crime was committed on January 29, 1982, but the second indictment was not filed until January 8, 1988, nearly six years later, their prosecution was time-barred absent proof beyond a reasonable doubt to the contrary. At a hearing on this motion, the state conceded that it had presented no evidence at trial to establish that the prosecution was timely, but it proffered evidence to the court to that effect at that time.[1] At the conclusion of the hearing, the trial court denied petitioners' motions for acquittal. The jury subsequently assessed Proctor's sentence at life imprisonment and Lemell's at 65 years' imprisonment.

---

[1] Specifically, the state presented evidence that the original indictment charged petitioners with a number of different offenses, including the aggravated robbery of Mr. Lew, the offense at issue in the second trial. Because no motion to dismiss that count of the original indictment was ever made, it remained pending after the original trial, thereby tolling the statute of limitations as to that offense. See Tex. Code Crim. P. Ann. art. 12.05(b) (West 2000) ("The time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation.").

-3-

The Texas Eleventh Court of Appeals reversed petitioners'
convictions on grounds that the convictions violated the Double
Jeopardy Clause of the United States Constitution. The Texas
Court of Criminal Appeals ("the TCCA") reversed the judgment of
the court of appeals on this issue and remanded the case to that
court to consider other alleged points of error. On remand, the
court of appeals affirmed petitioners' convictions, holding that
petitioners could not argue that their prosecution was time-
barred because they had failed to make a timely objection.
Petitioners filed another appeal.

The TCCA again reversed the court of appeals, this time on
the limitations issue.[2] The TCCA stated that "[t]he State has
the burden to prove that the offense was committed within the
statute of limitations period."[3] The court then cited a line of
cases to support this proposition.[4] The TCCA explained that "[a]
defendant's failure to object to a limitations defect on the face

---

[2]    Lemell v. State, 915 S.W.2d 486, 489-90 (Tex. Crim. App.
1995).

[3]    Id. at 489.

[4]    Id. (citing Barnes v. State, 824 S.W.2d 560, 562 (Tex.
Crim. App. 1992) ("The state had the burden to establish beyond a
reasonable doubt that the offense was committed within the statute
of limitations."); Vasquez v. State, 557 S.W.2d 779, 783 n. 5 (Tex.
Crim. App. 1977) ("The burden of proof is always on the State to
show that the offense alleged was committed . . . within the period
of limitation regardless of the date alleged."); Donald v. State,
306 S.W.3d 360, 362 (Tex. Crim. App. 1957) (reiterating the "well-
established rule" that the "burden is on the state to show that the
offense was committed within the period of limitations").

-4-

of the indictment does not relieve the State of its burden of proving at trial that the alleged offense occurred within the limitations period."[5]  In light of this holding, the TCCA remanded the case again to the court of appeals to determine whether the state had presented sufficient evidence at trial of the timeliness of the prosecution to sustain the convictions.[6]

On the second remand, the court of appeals determined that the evidence at trial was insufficient to establish that the prosecution was timely brought and, therefore, ordered acquittals.  The TCCA then granted the State's petitions for discretionary review to reconsider its earlier ruling.  In its second opinion on the limitations issue, issued on March 11, 1998, the TCCA overruled its prior precedent, including its previous decision in this case, and held that the burden of proof on limitations initially belongs to the defense, not the prosecution.[7]  Under this new rule, the defendant must assert limitations as a defense before the conclusion of the guilt-innocence stage of the trial.[8]  If the defendant asserts a limitations defense, only then must the prosecution prove beyond

---

[5]  Lemell, 915 S.W.2d at 489.

[6]  Id. at 490.

[7]  Proctor v. State, 967 S.W.2d 840, 844-45 (Tex. Crim. App. 1998).

[8]  Id. at 844.

a reasonable doubt that the prosecution is timely.[9]  In reaching this result, the TCCA acknowledged that it had "held repeatedly that the State must always prove, as part of its burden of proof in a criminal prosecution, that the prosecution is not limitations-barred, even if the defendant does not raise the issue."[10]  The TCCA then stated, however, that its previous cases lacked consistency, citing three cases in support of this proposition.[11]

Finally, the TCCA concluded that retroactive application of the new limitations rule did not violate petitioners' due process rights because it did not "deprive them, retroactively, of fair warning of what conduct will give rise to which criminal penalties."[12]  Relying on Collins v. Youngblood,[13] the court reasoned that its decision did not run afoul of the Due Process Clause because it did "not retroactively alter the definition of aggravated robbery as it existed in 1982, its range of punishment, or the substantive defenses that were available with

---

[9]     Id.

[10]     Id. at 843.

[11]     Id. (citing Ex parte Schmidt, 500 S.W.2d 144, 146 (Tex. Crim. App. 1973); Ex parte Ward, 470 S.W.2d 684, 686 (Tex. Crim. App. 1971); State v. Yount, 835 S.W.2d 6, 9-10 (Tex. Crim. App. 1993)).

[12]     Id. at 845.

[13]     497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

respect to it."[14]

In August 1999, Proctor and Lemell petitioned for writs of habeas corpus under 28 U.S.C. § 2254. The district court granted the State's motion for summary judgment and denied the petitions without opinion. Petitioners now appeal.

## II.

### A.

In a federal habeas appeal, this court reviews the district court's grant of summary judgment de novo,[15] "applying the same standard of review to the state court's decision as the district court."[16] Because Proctor and Lemell filed their habeas petitions after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[17] that statute supplies the appropriate standard of review of the state court's order. In relevant part, the AEDPA provides that a federal court may grant habeas relief to a state prisoner where the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[18] The phrases "contrary

---

[14] Proctor, 967 S.W.2d at 845.

[15] See Williams v. Scott, 35 F.3d 159, 161 (5th Cir. 1994).

[16] Beazley v. Johnson, 242 F.3d 248, 255 (5th Cir. 2001) (quoting Thomson v. Cain, 161 F.3d 802, 805 (5th Cir. 1998).

[17] 28 U.S.C. §§ 2241 et seq. (West 1996).

[18] 28 U.S.C. § 2254(d).

to" and "unreasonable application of" have meanings independent of each other and establish "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."[19]  Therefore, we evaluate the TCCA's decision under each of these standards in turn below.

B.

We first consider whether the TCCA's retroactive application to petitioners of the new limitations rule is "contrary to . . . clearly established federal law, as determined by the Supreme Court."[20]  A state court decision is "contrary to . . . clearly established federal law, as determined by the Supreme Court" in two circumstances: (1) where "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases;" or (2) where "the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."[21]  The Supreme Court has not decided a case on facts materially indistinguishable from the one at hand. Therefore, our task is to determine whether the TCCA's retroactive application of the new limitations rule to Proctor and Lemell contradicted clearly established Supreme Court law as

---

[19]    Williams v. Taylor, 529 U.S. 362, 404 (2000).

[20]    28 U.S.C. § 2254(d).

[21]    Williams, 529 U.S. at 405, 412-13.

it existed on March 11, 1998, the date of the TCCA's decision.[22]
This requires an analysis of Supreme Court law up to that date.

The Ex Post Facto Clause provides that "[n]o State shall . . . pass any . . . ex post facto Law."[23]  As its text makes clear, the Clause limits the powers of legislatures and does not, of its own force, apply to the judiciary.[24]  The Supreme Court has long recognized, however, that "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process."[25]  Therefore, the Supreme Court's ex post facto jurisprudence forms the starting point of the due process inquiry.[26]

The touchstone of the Supreme Court's ex post facto jurisprudence is Calder v. Bull.[27]  In that opinion, Justice Chase described four categories of prohibited ex post facto laws:

> 1st.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2d.  Every law that aggravates a crime, or makes it greater that it was, when committed.  3d. Every law that changes the punishment, and inflicts a

---

[22]     See id. at 412 (stating that "clearly established Federal law" as used in the AEDPA "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision").

[23]     U.S. Const. art. I, § 10, cl. 1.

[24]     See Marks v. United States, 430 U.S. 188, 191 (1977).

[25]     Rogers v. Tennessee, 532 U.S. 451, 456 (2001); see also Marks, 430 U.S. at 191-192; Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964).

[26]     See Bouie, 378 U.S. at 353-54.

[27]     Calder v. Bull, 3 U.S. 386 (1798).

greater punishment, that the law annexed to the crime, when committed. *4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.*[28]

It is the fourth of these categories, concerning changes in the legal rules of evidence, that is at issue in this case. Appellants argue that the Texas limitations rule "alters the legal rules of evidence" by reversing the burden of proof on limitations and falls squarely within <u>Calder</u>'s fourth category of <u>ex post facto</u> laws. Thus, appellants argue that this new rule cannot be retroactively applied to them. No Supreme Court case has addressed the applicability of <u>Calder</u>'s fourth category to judicial decisions. However, the Supreme Court has applied <u>Calder</u> to determine whether other types of changes in judge-made law violate the Due Process Clause.[29]

In <u>Bouie v. City of Columbia</u>,[30] two African-American college students were convicted of criminal trespass for participating in a sit-in demonstration in a restaurant area of a drug store that was reserved exclusively for whites.[31] Although the students did

---

[28]    <u>Id.</u> at 390 (emphasis added).

[29]    See <u>Bouie</u>, 378 U.S. 347; <u>Marks</u>, 430 U.S. 188; <u>Rabe v. Washington</u>, 405 U.S. 313 (1972) (overturning conviction on due process grounds where Washington Supreme Court's broadening of the criminal statute was unexpected and did not give defendant fair warning that his actions were proscribed).

[30]    378 U.S. 347.

[31]    <u>Id.</u>

not know that the restaurant was reserved only for whites when they entered, the police later informed them of this and asked them to leave.[32] The students refused.[33] In affirming the convictions, the South Carolina Supreme Court expanded its construction of the state criminal trespass statute to cover not only the act of entering another's property after receiving notice not to do so, but also the act of remaining after receiving notice to leave.[34]

Relying on Calder, the United States Supreme Court reversed the convictions.[35] The Court stated that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law."[36] Quoting Calder, the Court explained that an ex post facto law is "one 'that makes an action done before the passing of the law and which was innocent when done, criminal; and punishes such action,' or 'that aggravates a crime, or makes it greater than it was, when committed.'"[37] The Court concluded that because the State Supreme Court's unexpected judicial construction of the

---

[32]    Id. at 348.

[33]    Id.

[34]    See id. at 350.

[35]    378 U.S. 347.

[36]    Id. at 353.

[37]    Id. at 353 (quoting Calder v. Bull, 3 U.S. 386, 390 (1798)) (emphasis in original).

-11-

statute did not give the defendants fair warning that their conduct was prohibited, application of the new construction to the defendants violated their due process rights.[38]

Similarly, in <u>Marks v. United States</u>,[39] the defendants were charged with transporting hard-core pornography in violation of a federal statute.[40] After the conduct giving rise to the charges, but before the trial, the United States Supreme Court decided <u>Miller v. California</u>,[41] which announced a new test for determining whether pornography is protected under the First Amendment.[42] Under the Court's earlier decision in <u>Memoirs v. Massachusetts</u>,[43] the First Amendment protected expressive material unless it was "utterly without redeeming social value."[44] Under <u>Miller</u>, however, a work is constitutionally protected unless "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."[45]

At trial, the defendants argued that they should be judged

---

[38]    <u>Id.</u> at 362.

[39]    <u>Marks v. United States</u>, 430 U.S. 188 (1977).

[40]    <u>Id.</u>

[41]    <u>Miller v. California</u>, 413 U.S. 15, 23-24 (1973).

[42]    <u>Id.</u>

[43]    <u>Memoirs v. Massachusetts</u>, 383 U.S. 413, 418 (1966).

[44]    <u>Id.</u>

[45]    <u>Miller</u>, 413 U.S. at 24.

under the more protective <u>Memoirs</u> standard that was in place at the time of their conduct giving rise to the charges.[46]  The trial court disagreed and instructed the jury under the <u>Miller</u> standards.[47]  The defendants were convicted, and the Sixth Circuit affirmed.[48]

The Supreme Court reversed the convictions.  The Court held that retroactive application of <u>Miller</u> violated the defendants' due process rights because <u>Miller</u> punished some conduct that had been innocent under <u>Memoirs</u>.[49]  The Court stated that the principle that the Due Process Clause "is based on the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of constitutional liberty."[50]

Thus, both <u>Bouie</u> and <u>Marks</u> hold that the Due Process Clause prohibits retroactive application of judicial decisions that make previously innocent conduct criminal, action falling squarely within <u>Calder</u>'s first category of prohibited <u>ex post facto</u> laws. And while no Supreme Court case applies <u>Calder</u>'s fourth category

---

[46]   <u>Marks</u>, 430 U.S. at 190-91.

[47]   <u>See</u> <u>id.</u> at 191.

[48]   <u>See</u> <u>id.</u>

[49]   <u>Id.</u> at 194-96.

[50]   <u>Id.</u> at 191.

to judicial decisions,[51] the Court's 1990 decision in Collins v. Youngblood[52] called into question the viability of this category as applied even to legislative acts.

In Youngblood, the defendant was convicted in Texas state court of aggravated sexual abuse, and the jury imposed punishment of life imprisonment and a fine of $10,000.[53] In his state habeas petition, the defendant argued that the Texas Code of Criminal Procedure did not authorize a fine in addition to a term of imprisonment for his offense, and therefore, under the TCCA's decision in Bogany v. State,[54] the verdict was void, and he was entitled to a new trial.[55] The state district court granted the petition, but before it reached the TCCA, a new Texas statute became effective which allowed an appellate court to reform improper verdicts without remanding the case for a new trial.[56] The TCCA applied this statute to the defendant and denied the

---

[51]    In Cummings v. Missouri, 71 U.S. 277 (1866), the Court relied on Calder's fourth category to prohibit retroactive application of changes in the Missouri Constitution, and in Hopt v. Territory of Utah, 110 U.S. 574 (1884), the Court rejected an ex post facto challenge to a change in a witness competency statute. Both of these 19th century cases involve the Ex Post Facto Clause, not the Due Process Clause.  Moreover, both greatly predated Collins v. Youngblood, 497 U.S. 37 (1990).

[52]    Collins v. Youngblood, 497 U.S. 37 (1990).

[53]    Id.

[54]    Bogany v. State, 661 S.W.2d 957 (1983).

[55]    Youngblood, 497 U.S. at 39.

[56]    See id. at 39-40.

-14-

writ.[57]

The United States Supreme Court held that the TCCA's retroactive application of the Texas statute did not violate the Ex Post Facto Clause.[58] The Court initially listed all four of Calder's categories of ex post facto laws.[59] Later in its opinion, however, the Court subsequently endorsed an alternative definition of ex post facto laws from Beazell v. Ohio,[60] a prior Supreme Court decision, which omits Calder's fourth category.[61] The Court reasoned that the Texas statute was not an ex post facto law under Beazell because it did not "punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed."[62] The Court expressly acknowledged that "[t]he Beazell definition omits

_____

[57]    See id.

[58]    Id. at 51-52.

[59]    Id. at 42 (quoting Calder v. Bull 3 U.S. 386, 390 (1798)).

[60]    See Beazell v. Ohio, 269 U.S. 167, 169-70 (1925).

[61]    Youngblood, 497 U.S. at 42-43. Beazell defines an ex post facto law as "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed." 269 U.S. at 169-70.

[62]    Id. at 42.

the reference by Justice Chase in Calder v. Bull [internal citation omitted] to alterations in the 'legal rules of evidence.'"[63]   The Court then stated that Calder's fourth category "was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes."[64]   The Court concluded that "the Beazell formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause."[65]

Moreover, in overruling two other Supreme Court cases, Kring v. Missouri[66] and Thompson v. Utah,[67] the Youngblood Court emphasized that not all laws that "alter the situation of a party to his disadvantage" or "deprive him of a substantial right involved in his liberty" violate the Ex Post Facto Clause.[68]   In Kring, the Court held that the legislative abolition of a law that provided that a defendant's plea of guilty to second-degree

---

[63]   Id. at 43 n.3 (quoting Calder, 3 U.S. at 390).

[64]   Id. (citing Hopt v. Utah, 110 U.S. 574, 590 (1884) (rejecting ex post facto challenge of retroactive application of statute that declared felons competent to testify as witnesses) and Thompson v. Missouri, 171 U.S. 380, 386-87 (1898) (rejecting ex post facto challenge of retroactive application of statute allowing admission of handwritten documents for use as handwriting exemplars)).

[65]   Id. at 43.

[66]   Kring v. Missouri, 107 U.S. 221 (1883).

[67]   Thompson v. Utah, 170 U.S. 343 (1898).

[68]   Youngblood, 497 U.S. at 47-52.

murder, once accepted, served as an acquittal of the charge of first-degree murder violated the Ex Post Facto Clause as applied to the defendant.[69]  Overruling Kring, the Youngblood Court reasoned that the change "was not one related to the definition of the crime, but was based on the law regulating the effect of guilty pleas."[70]  The Youngblood Court continued:

> Missouri had not changed any of the elements of the crime of murder, or the matters which might be pleaded as an excuse or justification for the conduct underlying such a charge; it had changed its law respecting the effect of a guilty plea to a lesser included offense.[71]

The Youngblood Court also overruled Thompson, which held that a change in the number of jurors could be applied retroactively without offending the Ex Post Facto Clause.[72]  The Youngblood Court reasoned that although "the right to a jury trial is obviously a 'substantial' one, . . . it has [nothing] to do with the definition of crimes, defenses, or punishments, which is the concern of the Ex Post Facto Clause."[73]

Youngblood, therefore, cast the viability of Calder's fourth category in doubt by endorsing the Beazell definition of ex post facto laws.  Furthermore, in overruling Kring and Thompson, the

---

[69]    Kring, 107 U.S. 221.

[70]    Youngblood, 497 U.S. at 50.

[71]    Id.

[72]    Id. at 51-52, overruling Thompson, 170 U.S. 343.

[73]    Id. at 51.

-17-

Youngblood Court signaled that not all retroactive procedural changes–even those that affect a defendant's substantial rights–will implicate the Ex Post Facto Clause.[74]

Petitioners rely on Carmell v. Texas,[75] in which the Court invalidated the TCCA's retroactive application of legislation that changed the amount of testimony required to convict a sex offender.[76] The new Texas statute at issue in Carmell authorized conviction of certain sex offenses based on the victim's testimony alone, whereas the previous statute required corroborating evidence as well.[77] The Court held that the new statute constituted an impermissible ex post facto law.[78]

Petitioners reliance on Carmell is misplaced, however. To succeed on their habeas petitions, petitioners must demonstrate that the TCCA's application of the new limitations rule to them contradicted clearly established Supreme Court law *at the time of the TCCA's decision*.[79] Carmell was decided *after* the TCCA

---

[74]  See id. at 47-52.

[75]  Carmell v. Texas, 529 U.S. 513 (2000).

[76]  Id.

[77]  See id. at 516-20.

[78]  Id. at 552-53.

[79]  See Williams v. Taylor, 529 U.S. 362, 412 (2000) (stating that "clearly established Federal law" as used in the AEDPA "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions *as of the time of the relevant state-court decision*") (emphasis added).

rendered its decision in this case and, therefore, may not properly be considered a part of "clearly established" Supreme Court law at the time of the TCCA's decision.

In rejecting Proctor and Lemell's due process claims, the TCCA stated that the Due Process Clause guarantees that "a state judicial decision may not operate retroactively if it has the effect of depriving persons of fair warning of what conduct will give rise to which criminal penalties."[80] The TCCA found no due process violation because retroactive application of the limitations rule "[did] not retroactively alter the definition of aggravated robbery as it existed in 1982, its range of punishment, or the substantive defenses that were available with respect to it."[81]

In light of Youngblood and the absence of any Supreme Court case addressing the due process implications of judge-made changes to "the legal rules of evidence," we conclude that the TCCA's statement of law--that the Due Process Clause requires fair notice only of changes in the definition of the crime, its range of punishment, and the substantive defenses available with respect to it--did not "contradict" Supreme Court precedent at the time of the decision. However, we do not reach the question of whether that statement of law could stand if rendered after

---

[80] Proctor v. State, 967 S.W.2d 840, 845 (Tex. Crim. App. 1998).

[81] Id.

-19-

the Supreme Court's decision in Carmell.

Finally, petitioners argue that Rogers v. Tennessee,[82] decided by the Supreme Court just last term, supports their position. In Rogers, the Supreme Court held that retroactive application of judge-made law violates the Due Process Clause only where the change is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."[83] Assuming, without deciding, that the Rogers test was clearly expressed Supreme Court law as of the date of the TCCA's opinion, it would, nevertheless, not affect the outcome of this case.[84] We are not persuaded that Rogers is concerned with all unexpected changes judges make in the law because not all unexpected judicial changes result in due process violations. Rather, only those "unexpected and indefensible" judicial changes of the type with which the Ex Post Facto Clause is concerned violate the Due Process Clause.[85] For reasons stated above, we are satisfied that it was not clearly

---

[82] Rogers v. Tennessee, 532 U.S. 451 (2001).

[83] Id. at 461 (quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)).

[84] Appellant relies on language in Rogers that it derived this test from Bouie, which of course, was decided before March 11, 1998. See Rogers, 532 U.S. at 461 (quoting Bouie, 378 U.S. at 354).

[85] See Calder v. Bull, 3 U.S. 386, 391 (1798) (stating that "[e]very ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law").

-20-

established at the time of the TCCA's decision that the change in the Texas limitations rule was a type with which the Ex Post Facto Clause was concerned.  Therefore, we do not reach the next hurdle, expressed in Rogers, of whether that change was "unexpected or indefensible by reference to the law which had been expressed prior to the conduct in issue."[86]

## C.

We next address whether retroactive application of Texas' limitations rule "involved an unreasonable application of . . . clearly-established Federal law, as determined by the Supreme Court."[87]  A state court decision involves an unreasonable application of Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."[88] The inquiry into reasonableness is an objective one.[89]  Moreover, the state court decision may be incorrect without being "unreasonable."[90]  In light of our conclusion that the legal rule that the TCCA applied was not "contrary to" Supreme Court precedent, the question now is whether the TCCA applied the rule

---

[86]    Id.

[87]    28 U.S.C. § 2254(d).

[88]    Williams v. Taylor, 529 U.S. 362, 407-08 (2000).

[89]    Id. at 410.

[90]    Id. at 410-11.

it did in an objectively reasonable manner.

As stated above, the TCCA reasoned that retroactive application of the limitations rule did not violate petitioners due process rights because such application did not "retroactively alter the definition of aggravated robbery as it existed in 1982, its range of punishment, or the substantive defenses that were available with respect to it."[91]

Shifting the burden of proof on limitations from the prosecution to the defense does not alter the definition of a crime in the way understood in Calder and Youngblood.[92] In this case, the new limitations rule does not make conduct criminal that was previously innocent. As the TCCA stated, the limitations issue does not change the definition of aggravated robbery as it existed at the time of Proctor and Lemell's conduct.[93] Therefore, we hold that the TCCA's conclusion that the new limitations rule did not alter the definition of the crime of aggravated battery was not an unreasonable application of clearly established Supreme Court precedent.

Furthermore, it follows from Youngblood that the new limitations rule did not retroactively alter the substantive

---

[91] Proctor v. State, 967 S.W.2d 840, 845 (Tex. Crim. App. 1998).

[92] See Calder v. Bull, 3 U.S. 386, 390 (1798); Collins v. Youngblood, 497 U.S. 37, 43 and n.3 (1990).

[93] Proctor, 967 S.W.2d at 845.

defenses available to petitioners with respect to the crime of aggravated robbery.  Like the change of law at issue in Youngblood, shifting the burden of proof regarding limitations does not change "the matters which might be pleaded as an excuse or justification for the conduct underlying [the] charge."[94] Thus, we conclude that the TCCA's decision that the new limitations rule did not alter any substantive defense available to Proctor and Lemell was also not objectively unreasonable.[95]

## III.

For the reasons stated above, we conclude that the TCCA's holding that retroactive application to petitioners of the new limitations rule did not violate their due process rights was not "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Accordingly, the district court's denial of habeas relief under § 2254 is hereby affirmed.

AFFIRMED.

---

[94]    Youngblood, 497 U.S. at 50 (explaining that the law at issue in Kring v. Missouri, 107 U.S. 221 (1883), was not an ex post facto law because it did not change "the matters which might be pleaded as an excuse or justification for the conduct underlying such a charge [of murder]").

[95]    Finally, we note that the TCCA's conclusion that the new limitations rule did not affect the range of punishment to which Proctor and Lemell were subjected was certainly not unreasonable.