EDMONDSON, Chief Judge,
dissenting,
in which BIRCH and WILSON, Circuit Judges, join:
Federal law should give fair warning before it imposes new penalties on a person. So, although I accept that Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974), should be overturned, I must dissent from the retroactive application of today’s decision that does away with the interspousal wiretap exception.
Today we overturn our precedent, clearly established since 1974, which allows for an interspousal exception to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22 *1224 (“Wiretap Act”). See Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974).[1] But the adversarially-presented arguments in this case also present a controversy about whether today’s decision will be given a prospective or retroactive application. Thus, we are faced with the question of whether we should retroactively apply the new interpretation of the law to Mr. Glaz-ner and, thereby, subject him in federal court to pay not only compensatory damages, attorney fees and court costs, but also to pay punitive damages for committing an act that was lawful under the pertinent federal law of our Circuit when he acted.[2] I believe that the answer to the question is “No.” I believe that we are not required by the law to subject Mr. Glazner — and all similarly-situated persons — to retroactive liability and penalties. To the contrary, the Supreme Court, I believe, has indicated that we should not apply the new and expansive interpretation in that way.[3]
As a rule, retroactivity is strongly favored in judicial decisionmaking. I agree with this approach: prospective lawmaking is more like what legislatures generally do. But never has the Supreme Court or our Court ruled out altogether prospective decisions as being beyond the lawful power of federal courts. And I think, if prospective decisionmaking is ever justified, this kind of case — the explicit overruling of a long-established, statutory-construction precedent impacting on private parties, with punitive consequences arising as a result — is one where it is appropriate.[4]
*1225 I.
“Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor.” E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 295, 122 S.Ct. 754, 765, 151 L.Ed.2d 755 (2002), quoting Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981).[5]
On punitive damages, the Supreme Court has said that “[t]he very labels given ‘punitive’ or ‘exemplary’ damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions. Retroactive imposition of punitive damages would raise a serious constitutional question [under the Due Process Clause].” Landgraf v. USI Film Products, 511 U.S. 244, 281, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) (statutory case) (declaring that defendants did not have to pay compensatory and punitive damages for acts that occurred before such penalties were established) (emphasis added). The Fifth Amendment’s Due Process Clause provides protection and repose, demanding fair notice. See id. at 266, 114 S.Ct. at 1497. We have not found, nor has anyone brought to our attention, an instance where the Supreme Court changed the established construction of a federal statute to make penalties apply retroactively to conduct that clearly appeared not to carry that penalty under federal law when the act was committed.
The United States Constitution prohibits both Congress and the States from passing an ex post facto law, that is, from passing a law to make unlawful earlier conduct that was lawful when done. U.S. Const, art. I, § 9, cl. 3; U.S. Const, art. I, § 10, cl. 1. Of course, the clause is binding only on legislatures. See Marks v. United States, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977) (criminal case). But the similar Due Process principle of fair notice applies to the judiciary’s acts. See id. at 191-92, 992-93 (“[T]he principle on which the [Ex Post Facto] Clause is based *1226 [—] the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties [—] is fundamental to our concept of constitutional liberty”)- As such, the Due Process Clause of the Fifth Amendment prohibits the judiciary from punishing parties through judicial construction of a statute unless fair notice was given that the conduct was prohibited before the conduct took place. See id.; see also Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (criminal case); Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972) (criminal case).[6] “Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly.” Landgraf, 511 U.S. at 265, 114 S.Ct. at 1497 (1994).
In the present case, the wife admits in her brief that Simpson “provide[s] immunity” for interspousal wiretapping; and she concedes that the overturning of Simpson would create new law for the Circuit. Even if we think Mr. Glazner’s wiretap was not right, it seems very wrong for a federal court to subject him to punishment for committing an act that was clearly lawful under the pertinent federal law in the Eleventh Circuit when he committed the act.[7] See generally Landgraf, 511 U.S. at 283 n. 35, 114 S.Ct. at 1506 n. 35 (“Even when the conduct in question is morally reprehensible or illegal, a degree of unfairness is inherent whenever the law imposes additional burdens where there clearly were none before.”).
Law is not static. It can change. But the Constitution sets some limits on how the law can be changed and on whom the *1227 change can impact. Given the long-standing construction in this Circuit of the pertinent federal statute when Mr. Glazner conducted the wiretap, he was not fairly warned that his conduct would violate the federal statute. I worry that applying our new construction of the statute to Mr. Glazner today violates the Constitution. “The law is a causeway upon which, so long as he keeps to it, a citizen may walk safely.” Robert Bolt, “A Man for All Seasons” Act II, 89 (Vintage 1960) (speech of Sir Thomas More). As we said before, “[t]o be free of tyranny in a free country, the causeway’s edges must be clearly marked.” United States v. Brown, 79 F.3d 1550, 1562 (11th Cir.1996). In this Circuit, the federal law’s borders were marked before today in a way that did not penalize a wiretap of the kind underlying this case.
II.
I question whether Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), controls this case. I have already set out my view that the Constitution directly bars a retroactive application of today’s new interpretation of the pertinent statute. I also suspect that the circumstances here (a case involving a change in substantive law with quasi-criminal aspects) are too different from Chevron Oil,[8] but I will accept that it does apply for discussion’s sake. Applying the Chevron Oil analysis to this case, I believe that today’s new edict removing the interspousal wiretap exception should not be applied retroactively.
Briefly stated, Chevron Oil considered three elements in deciding whether to apply a rule retroactively: (1) whether a new principle of law has been established; (2) whether retroactive application of that new law would “further or retard” the purpose and effect of the rule in question; and (3) whether substantial inequity would result from its retroactive application. Chevron Oil, 404 U.S. at 106-07, 92 S.Ct. at 355.[9]
Everyone agrees that the first element — whether new law has been established — is clearly met with the overturning of Simpson. In my view, the second element also does not support retroactive application. The retroactive application of the new interpretation — which removes the interspousal wiretap exception — does not retard the purpose of the pertinent statute, but neither does it further the purpose more than applying the old Simpson interpretation to the instant case. The statute’s core goal is not to punish wiretapping, but instead to prevent (prohibit by deterrence) wiretapping.[10] Here, *1228 the wiretap has already occurred; and neither the law of the Simpson case nor the law of today’s case can prohibit or prevent wiretaps that have already happened. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 17-18, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976) (“hesitat[ing] to approve the retrospective imposition of liability on any theory of deterrence or blameworthiness”) (internal citations omitted). Furthermore, applying the Simpson rule to Mr. Glazner — and those persons materially similar — will not encourage others to wiretap their spouses in the future. We have made clear today that the interspousal exception no longer exists in our Circuit. We have furthered the deterrent purpose whether we apply today’s decision retroactively or not. We must weigh the last element: whether substantial inequity would result in applying the new statutory interpretation retroactively. Before today, it was clearly established law that it (even if dishonorable) was not illegal under federal law, as long interpreted by our Circuit, for a husband to record his wife’s conversations (or vice versa) in the home that they shared.[11] Sitting en banc (as we must when we overrule a past precedent), we have just now changed the law of the Circuit. But in this country, a law must be made accessible to people before punishment may be imposed so that the people have the opportunity to obey the law. To do otherwise is fundamentally unjust.
Given the nature of our federalism, the nonexistence of an interspousal wiretap exception under state law does not make the retroactive removal of the federal exception and the application of federal penalties just or lawful. We are bound to apply the federal law of our Circuit, even if there is a contrary state law in a state where we sit.[12] That wiretapping one’s spouse is unlawful under an Alabama statute does not make it unlawful under a federal statute. That a person is subject to be penalized under a state statute by the state sovereign does not mean that he is subject to penalties by the federal sovereign under a federal statute.[13]
*1229 Mrs. Glazner — if she wishes — may possibly pursue a state claim against her husband for the wiretap. The states may punish conduct violating the states’ preexisting laws. But she should not be able also to pursue a federal claim against him under the statute involved in the present case. The precise question before us is whether it is inequitable, that is unfair, for the federal sovereign to penalize Mr. Glaz-ner. I believe it is terribly unfair for federal courts to penalize completed conduct which the federal courts said was lawful at the time of the conduct. Today’s Court definitely adds a new and burdensome legal consequence to Mr. Glazner’s 1999 conduct: a federal cause of action for, among other things, punitive damages. And especially to the extent that Mrs. Glazner (and those like her) already has causes of action in state court for the wiretap, it hardly seems unfair to say to her, given the legal history, that she cannot also have the benefit of a new federal cause of action as well.
I need to stress the sweep of the Court’s decision today. If we retroactively apply this new rule, it will not just be Mr. Glaz-ner who will be treated unfairly, but also anyone else who has already completed a similar act, including those persons who— before undertaking to wiretap — first sought competent legal advice about federal law, then directly relied on Simpson, and took pains to stay within the federal law’s proverbial “causeway.”[14] Once we decide to apply a rule retroactively, we, as I understand the law, must apply the rule retroactively to all whose cases are still pending. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 544 (11th Cir.2002) (en banc).
III.
My decision on retroactivity has an impact on my decision on whether Simpson ought to be overruled at all. If I believed a retroactive application was truly required, I would not overrule Simpson.
I reluctantly go along with overruling Simpson. My colleagues think that the court got it wrong about Congress’s intent when Simpson, in 1974, construed the statute to exempt interspousal wiretaps in the marital residence. I think my colleagues’ interpretation of the statute today is more likely correct. But we are not writing on a blank slate in this case. And stability and certainty in the law are extremely important. Overruling long-established precedents undercuts stability and certainty. So, I tend to think that leaving precedents undisturbed, unless they are very obviously mistakes, is best (especially long-made precedents construing statutes).
I do not regard Simpson as absurd. And, after all, if the courts in the Fifth and Eleventh Circuits have very badly misread the statute, Congress and the Supreme Court have had nearly thirty years to correct this error — an “error” that before today governed more than one out of every five people in the United States[15]; but neither the Supreme Court nor Congress has acted to correct what we now see as the Simpson fallacy. Still, I do not dissent from today’s new construction of the stat *1230 ute. But the past thirty years are not easily erased. In my view, we should not act as if Simpson never was the law to the people in this Circuit.
I would apply today’s interpretation of the Wiretap Act to cases based on occurrences of wiretapping in the future, not the past.
On this basis, I would affirm the district court’s judgment.

. All decisions by the former Fifth Circuit issued before 1 October 1981 are binding as precedent on the Eleventh Circuit. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981)(en banc).

. 18 U.S.C. § 2520 allows the victim of wiretapping to bring a civil suit against the alleged violator. In addition to equitable relief as may be appropriate, the party may receive not only statutory or actual damages (whichever is greater), but also attorney fees and court costs, and punitive damages. § 2520(b)(1)-(3).
By the way, 18 U.S.C. § 2511(4)(a) seems to allow the government to bring criminal charges: "Except as provided in paragraph (b) of this subsection or in subsection (5), whoever violates subsection (1) of this section shall be fined under this title or imprisoned not more than five years, or both.”
Because the pertinent statute is part of the Omnibus Crime Control and Safe Streets Act of 1968 and seems to make the conduct here in question a crime (under our new construction of the statute), it might be more accurate to analyze the application of any part of the Act as a matter of criminal law, not civil. But I will do as the Court has done (since the case before us is a civil case) and will not approach the case as purely a criminal law matter, although I will look to criminal law cases for guidance, because this case involves quasi-criminal elements.

. I focus on the punitive damages provision of the statute, but I do not mean to suggest that the retroactive application of our judicial enlargement of the Wiretap Act would be right if punitive damages were not involved. In either event, today’s decision adds a new and burdensome legal consequence to Mr. Glaz-ner's 1999 conduct: a federal cause of action for damages. For me, this situation is the main cause for concern. Then, in addition, the cause of action is one that allows punitive damages per the statute. Whether Mr. Glaz-ner, in fact, will win or lose this lawsuit and whether, if he loses, he will have to pay punitive damages, besides other damages, is speculative. But what is, as a matter of law, definite now is this idea: today’s decision allows Mr. Glazner to be lawfully sued for all the remedies allowed by the statute. Mrs. Glazner has expressly prayed for punitive damages in her complaint in this action, which the Court today allows to go on against Mr. Glazner.

. In a kind of criminal law counterpart to Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court has said that new constitutional rules governing criminal procedure should be applied retroactively to cases not yet final. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). That decision does not, however, affect the retroactive or *1225 prospective application of a new substantive change in criminal law. Griffith is not controlling here.

. Punitive damages are commonly viewed as quasi-criminal. The Restatement 2d Torts § 908(1) defines "punitive damages” as "damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." Most jurisdictions view punitive damages in that way. See U.S. E.E.O.C. v. W & O, Inc., 213 F.3d 600, 616 (11th Cir.2000) ("We start from the principle that punitive damages are awarded solely to punish defendants and deter future wrongdoing.”) (internal quotations omitted); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 19, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991) ("It is true, of course, that under Alabama law, as under the law of most States, punitive damages are imposed for the purposes of retribution and deterrence. They have been described as quasi-criminal.”) (internal citation omitted); Smith v. Wade, 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983) (stating that the purposes of punitive damages are to punish and to deter, quoting the definition from Restatement (Second) of Torts § 908(1)); McKinnon v. Kwong Wah Restaurant, 83 F.3d . 498, 508 (1st Cir.1996) (same); Ciraolo v. City of New York, 216 F.3d 236, 246 (2d Cir.2000) (same); Dunn v. HOVIC, 1 F.3d 1371, 1404 (3rd Cir.1993) (same), modified, 13 F.3d 58 (3rd Cir.1993); Belk v. Charlotte-Mecklenburg Ed. of Educ., 269 F.3d 305, 346 (4th Cir.2001) (same); Matter of P & E Boat Rentals, Inc., 872 F.2d 642, 652 (5th Cir.1989) (same); In re Sallee, 286 F.3d 878, 903 (6th Cir.2002) (same); Calhoun v. DeTella, 319 F.3d 936, 942 (7th Cir.2003) (same); Denesha v. Farmers Ins. Exchange, 161 F.3d 491, 503 (8th Cir.1998) (same); In re Exxon Valdez, 270 F.3d 1215, 1245 (9th Cir.2001) (same, declaring criminal-fine precedents particularly informative in civil cases because of the quasi-criminal nature of punitive damages); Searles v. Van Bebber, 251 F.3d 869, 878 (10th Cir.2001) (same); Jordan v. Medley, 711 F.2d 211, 216 (D.C.Cir.1983) (same).

. While not a strict analogy, it is pretty fair to say that as the Ex Post Facto Clause is to the legislature, the Due Process Clause is to the judiciary. This observation is not to say that the legislature and judiciary are subject to the same rules, but rather that the two branches are guided by the same important principle: protecting the people and their liberties from an abuse of government.
Cf. Rogers v. Tennessee, 532 U.S. 451, 462, 121 S.Ct. 1693, 1700, 149 L.Ed.2d 697 (2001) (criminal case) (stating that the Ex Post Facto Clause principles cannot strictly be applied to the common law, but concluding that "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect ... [when] it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.’”), citing Bouie v. City of Columbia, 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964). Here, we are not dealing with the judicial alteration of a common law doctrine, but rather of a legislative enactment.

. As I understand it, roughly half of the federal circuits have expressed no view about whether an interspousal exception applies to the pertinent statute. Several circuits have opined that no such exception applies. But that some other circuits have concluded that no interspousal wiretap exception exists did not — could not — remove the binding force of Simpson as the law of this Circuit before today. Circuit splits are not uncommon. And they are not resolved by a majority vote of the circuits. They are resolved by Congress or the Supreme Court. Therefore, that other circuits gave the statute a different meaning than Simpson provided inadequate notice to the residents of this Circuit that the statutory construction would change and, more important, that a new construction would be applied retroactively in this Circuit to completed conduct.
By the way, it is not just the Fifth and Eleventh Circuits that have said that some exception applies to the pertinent statute for wiretaps made by a spouse in his residence. The Second Circuit, in Anonymous v. Anonymous, 558 F.2d 677 (2d Cir.1977), concluded that no Title III violation arises when a spouse (or ex-spouse) wiretaps his own phone in his own home in purely domestic matters, which are "clearly to be handled by the state courts.” Id. at 679. See also Janecka v. Franklin, 843 F.2d 110 (2d Cir.1988) (upholding dismissal of Title III claim on the authority of Anonymous).

.Chevron Oil involved whether to apply a change in a statute of limitations retroactively. In a recent case, our Circuit, en banc, used the Chevron Oil test to decide whether a new rule allowing district courts to deny plaintiffs leave to amend their complaints sua sponte should be applied retroactively. We decided that the answer was "No”: the rule should be applied prospectively only. Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541 (11th Cir.2002)(en banc). Less concern arises from applying laws retroactively in procedural matters because they "regulate secondary rather than primary conduct.” Landgraf, 511 U.S. 244, 275, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229. Yet, as Wagner shows, even in procedural matters we hesitate before applying changes retroactively; and we sometimes — I think quite rightly — decline to do so.

. Chevron Oil has since been limited, by disallowing selective prospectivity. Once a new rule has been applied retroactively to one party in a case, it must be applied retroactively to all parties in all similar cases. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 544 (11th Cir.2002); see also McKinney v. Pate, 20 F.3d 1550, 1566 (11th Cir.1994) (enbanc).

. "To assure the privacy of oral and wire - communications, title III prohibits all wiretapping and electronic surveillance by persons other than [those] duly authorized....” S.Rep. No. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2153.

. I assume that Mr. Glazner did not actually rely on the Simpson rule before acting, but the record is not completely clear. While it appears to be clear that he did not seek advice from legal counsel about the use of the tape recorder, it is not clear whether he learned of the Simpson rule in some other way. The larger point, though, is that it is not important whether Mr. Glazner actually relied on Simpson before acting. The important fact is that his conduct was not contrary to federal law when he committed the conduct. In general, that which is not prohibited is permitted. In addition, here, there was express permission, per Simpson.

. "We live in the jurisdiction of two sover-eignties, each having its own system of courts to declare and enforce its laws in common territory.... They exercise jurisdiction, it is true, within the same territory, but not in the same plane.” Ponzi v. Fessenden, 258 U.S. 254, 259, 261, 42 S.Ct. 309, 310, 311, 66 L.Ed. 607 (1922).

. Predictability in the law is important. People are supposed to be able to plan what they will do and to know with some level of confidence whether the planned acts are lawful or not and, even if not, what the consequences will be from different sides. One advantage of having a country made up of many different jurisdictions is that people have a right to move from state to state, or from circuit to circuit, to live in a place that adheres to the version of laws that they prefer. For example, corporations clearly decide where to settle on the basis of law. See generally Guhan Subramanian, The Influence of Antitakeover Statutes on Incorporation Choice: Evidence on the “Race” Debate and Antitakeover Overreaching, 150 U. Pa. L.Rev. 1795 (2002)(finding that corporations often decide not to incorporate in Massachusetts, Ohio, and Pennsylvania because of their severe antitakeover statutes). I am not trying to be facetious; but before today, some spouses might have chosen to live in the Eleventh Circuit because they could wiretap their own telephone without being liable under federal law. Even if we think it unlikely that someone would live in our Circuit to avoid liability under federal law for wiretapping their spouse, it is our job to ensure that someone *1229 cannot be punished retroactively for doing so, as the act was clearly lawful.

. I am reminded of the legal maxim, "No one need be wiser than the laws.” S.S. Pel-oubet, A Collection of Legal Maxims in Law and Equity, with English Translations 177 & No. 1452 ("Neminem oportet esse sapientiorem legibus”) (Fred B. Rothman & Co.1985) (1884). It is sufficient that one is on the federal law’s causeway; one should not need to foretell how and where the federal law may change tomorrow to avoid federal penalties for something done today.

. According to the 2000 Census, 20.2% of the U.S. population resides in the Eleventh and Fifth Circuits.